196 So. 114

### STATE v. FIRST NAT. BANK OF MOBILE.

I Div. 83.

Supreme Court of Alabama.

May 9, 1940.

Smith & Johnston and Chas. B. Arendall, Jr., all of Mobile, for appellee.

Thos. S. Lawson, Atty. Gen., and John W. Lapsley and J. Edw. Thornton, Asst. Attys. Gen., for appellant.

494

· BOULDIN, Justice.

The First National Bank of Mobile made its return to the State Tax Commission purporting to show its net income for the tax year of 1937, for computation of the state excise tax measured by its net income.

. The State Tax Commission, after notice and hearing, disallowed certain deductions claimed by the Bank, and made a further assessment accordingly.

The Bank appealed to the circuit court of Mobile County resulting in a judgment allowing in part the deductions claimed by the Bank, and disallowing some in part. The Bank concedes the correctness of this judgment.

The State appeals to review this judgment in so far as the disputed deductions were allowed.

Since the decision in McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579, it has been the settled law that National Banks are Federal Agencies directly related to the fiscal affairs of the Federal Government; that such banking institutions are not subject to state tax burdens, except as ·Congress shall grant the privilege. The State has no inherent power to impose the taxes here in question. It is a question of power conferred by Congress. Sumter County v. National Bank of Gainesville, 62 Ala. 464, 34 Am.Rep. 30.

The privilege granted by Congress finds expression in Section 5219, Revised Statutes of the United States and sundry amendments, now codified in 12 U.S.C.A. p. 604, § 548.

The pertinent provision of this statute reads: "The legislature of each State may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several States may (1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, or (3) tax such associations on their net income, or (4) according to or measured by their net income, provided the following conditions are complied with."

The "manner" or "form" of taxing such banking institutions thus prescribed is in the alternative, the selection of one being in lieu of the others. Same Section 1(a).

One of the vital provisions running through all these acts of Congress is that the tax burden on such institutions shall not be greater than that imposed on moneyed capital coming into competition with the business of national banks. Same Section 1(b).

With these restrictions in view, the Legislature of Alabama by the Act of 1933, General Acts Extra Session 1933, p. 104, elected alternative No. 4, of § 548, supra, namely, the imposition of an excise tax

measured by the net income of Banks and other financial institutions coming into competition with national banks.

This Act of 1933, Section 1(b), defines "Net Income" thus: "(b) 'Net Income' shall mean and include the net income for the taxable year, as in this Act defined, arising from the business the privilege to engage in which is hereby taxed computed by deducting from the gross income arising from such business, without any exclusions from or credit to such gross income, the total amount of the following deductions: * * * (5) Bad Debts.—Debts ascertained to be worthless and charged off within the taxable year; provided, however, in the case of Banks only such debts can be charged off, and to such amount or extent, as approved, or required to be charged off, by State, Federal or Federal Reserve bank examiners; when satisfied that a debt is recoverable only in part, the State Tax Commission may allow the deduction of a part of such debt."

This statute was considered in State v. Merchants Nat. Bank of Mobile, 230 Ala. 661, 162 So. 270, 274.

That case involved the claim of the Bank for a deduction, as for a loss during the tax year, in an amount charged off the market value of bonds, owned by the Bank on order of the National Bank Examiner pursuant to regulations of the Comptroller of Currency of the United States.

The State insisted these bonds were investments on which deductions were allowable only when the loss was ascertained by sale of the bonds, like other losses on capital assets; and, furthermore, that the action of the comptroller is not binding on the State, and the action of the Bank Examiner pursuant to such regulation "does not ipso facto make such amount either a loss or a bad debt" within the meaning of our statute, supra.

This court held that the bonds in question, namely, bonds in default as to interest, which by regulation of the comptroller must be carried on the books of the Bank at a value not exceeding their market value, and at a write-down value placed thereon by report of a National Bank Examiner, were debts within the meaning of our statute, and the deduction claimed was squarely within Section 1 (b) (5).

Pending the consideration of State v. Merchants Nat. Bank of Mobile, supra, the Legislature was considering the General Revenue Bill of 1935, which was approved some ten days after our decision was rendered.

The Act of 1933, supra, levying an excise tax on financial institutions was embodied in Section 346.1 of the Revenue Bill, General Acts 1935, p. 428 et seq.

Subdivision (5) of subsection (b) was amended to read: "(5) Bad Debts. Debts ascertained to be worthless and charged off within the taxable year. Provided, however, that a schedule of such debts shall be filed and the reasons supporting such claim for deduction be filed with the return. Provided, further that bad debts shall not include losses on stocks and bonds or a reduction in the market value of such stocks and bonds except where loss is determined by sale of such securities. Provided however, in the case of banks only such debts can be charged off and to such amount or extent as approved or required to be charged off by State, Federal or Federal Reserve Bank Examiners, provided that the State Tax Commission shall not be required to make any allowance because of such action of such examiners. Provided, further, that when satisfied that a debt is recoverable only in part, the State Tax Commission may allow a deduction of a part of such debt."

Thus the statute stood at the time the instant case arose.

The agreed facts disclose:

In 1937 the First National Bank of Mobile owned certain bonds purchased at a premium.

By a regulation of the Comptroller, promulgated under his supervisory powers over National Banks, the premiums upon bonds acquired by such Bank are to be amortised for the period the bonds run before maturity, and an amortised portion of such premium charged off each tax year. The National Bank Examiner is empowered and directed to ascertain the amount of such charge off and cause same to be made. The Bank Examiner in 1937 did, accordingly, charge off the amortised portion of the premiums on the bonds held by this Bank. The Bank claimed a deduction for excise tax purposes of the amount so charged off. The Tax Commission disallowed such deduction. The trial court, on appeal, held the deduction proper. This is the chief question presented on this appeal. It is not questioned that the amount charged off truly reflects the amortised

portion of the premiums to be charged off for 1937 under the regulations of the Comptroller.

Notwithstanding this admitted fact, the State insists the State Tax Commission has a discretion to ignore the action of the Bank Examiners, disallow any such deductions from year to year, and allow a deduction for actual loss determined upon a sale of the bonds, if sold before maturity, or a gross deduction of the amount of the premium when the bond matures, and the Bank collects only the face value of the bond.

This insistence is based on a construction of the clause in the Act of 1935, supra, reading: "provided that the State Tax Commission shall not be required to make any allowance because of such action by such examiners."

The Bank insists this provision means that the Tax Commission, as a fact finding body, is not concluded by the action of the Bank Examiner in ascertaining bad debts to be charged off; that prima facie the action of the Bank Examiner is to be taken as correct, but the Tax Commission may ascertain whether there has been error in his finding of facts, etc. Quite clearly this statute puts a definite limit on the amount the Tax Commission may allow as a deduction for bad debts as affecting net income. "Only such debts * * * and to such amount or extent as approved or required to be charged off" by the Bank Examiner, says the statute. The State's construction would make the Bank Examiner's finding conclusive against the Bank as to deductions allowed for bad debts, but leave it wholly to the discretion of the Tax Commission as to whether the action of the Bank Examiners shall figure in what deductions shall be disallowed. Such lack of mutuality is not to be favored.

But the graver objection to the State's insistence is that, as construed, the statute would be subject to the objection that legislative power shall not be conferred upon administrative bodies.

If the statute undertakes to invest the Tax Commission with the absolute discretion claimed, it undertakes to confer the power to fix the basis of excise taxes on Banks from year to year, a legislative function.

There is a well founded distinction between fixing the basis of taxation, and the fact finding function of ascertaining the taxes payable on the basis fixed by law.

The statute must be read as a whole in the light of constitutional principles, and also in view of the fact that all the State's power to tax National Banks is permissive, and its statutes must be considered in the light of Federal Statutes granting this permission.

Thinking of the case in hand, it cannot be said the charge off of premiums under regulations of the Comptroller is a mere bookkeeping proposition. The premium paid for bonds reflects the market value as affected by the rate of interest they bear and the time they have to run. This premium value normally depreciates as the maturity of the bond approaches, when the holder must accept face value in full satisfaction.

The amortization of the premium and charge off as a bad debt from year to year is designed to truly reflect the resources and liabilities of a National Bank as a Federal Agency from year to year. To carry the bonds at the full premium value until they mature, is to bring about a sudden radical reduction of resources as of that date, which in fact represents a cumulative reduction from the time the bonds were acquired.

The contention that the State tax burden is the same whether the deduction is made from year to year or made in gross when the bond matures, or upon a sale of the bonds before maturity, is obviously unsound. The Bank would be without the use of its money, and the State would have the use of it probably for years, if the State's contention be sustained. Moreover, the discretion claimed, would enable the Tax Commission by change of basis from time to time, to deprive the Bank, as well as its supervising officials, of all opportunity to anticipate its tax burdens; inject into the situation an element of uncertainty as to assets and liabilities so essential to the functioning of this Federal Agency. It is no answer to say the State Tax Commission may adopt a consistent policy and so advise in advance.

The discretion, if such there be, is a continuing one. If one basis be applied to one set of Banks, and a different basis to another, there could result a discrimination fundamental to the permissive right of the State to tax National Banks.

Attention is directed to the Act of September 13, 1939, General Acts 1939, p. 496, amending Subsection (b) (5) of Section 346.1, Act of 1935, supra.

This act clearly renders charge offs by Bank Examiners, such as here involved conclusive on the Tax Commission. It also deals with the sale of bonds before maturity.

We do not undertake to discover how far this statute may shed light on the proper construction of the Act of 1935. In any event, it discloses a present State policy quite at variance with the discretion claimed by the State under the Act of 1935.

Nor do we consider questions which diligent counsel on both sides have brought forward indicating conflicting views of the Federal Board of Tax Appeals and of Appellate Federal Courts touching the powers of the Commissioner of Revenue to go behind the work of Bank Examiners in the administration of the Federal Income Tax Laws.

Our conclusion is that on sound principles of construction in the light of legal principles governing the power of the State to tax National Banks, the trial court was correct in allowing the deduction here involved.

The taxpayer having given a supersedeas bond on appeal to the circuit court as per Section 103, p. 307, Revenue Bill 1935, we are of opinion that the lawful rate of interest as per last clause of that Section (page 309) governs in this case rather than Section 346.4, p. 432.

The trial court so ruled. He also properly disallowed the penalty of 1% per month for delinquency pending this suit.

Affirmed.

GARDNER, C. J., and THOMAS and FOSTER, JJ., concur.