This case presents the question of whether the financial institution excise tax, levied pursuant to Ala. Code 1975, §40-16-1 et seq., applies to the credit card business conducted by national banks located outside Alabama with Alabama residents. The trial court, relying on this Court's decision inEx parte Dixie Tool Die Co., 537 So.2d 923 (Ala. 1988), held that because Alabama's financial institution excise tax was enacted at a time when the State was prohibited by federal law from taxing out-of-state national banks and the legislature was aware of this federal law when enacting the tax, the tax could not be levied on these banks. We affirm.
 FACTS
The attorney general of the State of Alabama sued Chase Manhattan Bank (USA), *Page 1042 
National Association; Citibank (South Dakota), N.A.; Maryland Bank, N.A.; Bank of America National Trust and Savings Association; Colonial National Bank USA; and First Interstate Bancard Company, N.A., seeking a judgment declaring that the financial institution excise tax levied pursuant to Ala. Code 1975, § 40-16-1 et seq. ("the excise tax"), applies to out-of-state national banks that solicit applications from residents of Alabama for Visa and MasterCard credit cards issued by these banks. By agreement, the banks are acting through Chase Manhattan Bank (USA), National Association ("Chase").
The facts of the case are stipulated as follows:
"1. The Chase Manhattan Bank (USA), National Association ('Chase') is a National Banking Association.
"2. Chase is located in Wilmington, Delaware and has no offices, branches or other places of business in Alabama. . ..
"3. To facilitate the making of loans as authorized by the National Bank Act, Chase maintains credit card accounts.
"4. Chase issues credit cards — both Visa and MasterCard.
"5. Chase has been issuing Visa credit cards since February, 1982 and MasterCard credit cards since March, 1985.
"6. Chase has issued Visa and Mastercard credit card accounts to persons residing in Alabama as well as to persons residing in other states.
"7. Since 1982 Chase has opened approximately 50,000 Visa and MasterCard credit card accounts with persons having billing addresses in Alabama out of a total of more than 4,000,000 credit card accounts opened by Chase during such period.
"8. From outside Alabama by direct mail Chase solicits credit card applications from persons residing throughout the United States, including from time to time persons residing in Alabama.
"9. Since 1982, Chase has from outside Alabama by direct mail solicited applications for credit card accounts from persons residing throughout the United States including, from time to time, persons residing in Alabama, and continues to solicit applications by direct mail from time to time from persons with Alabama addresses along with persons having addresses elsewhere.
"10. The Visa and MasterCard credit cards that are issued to persons residing in Alabama are valid for a term certain, up to 2 years, and the credit card may be used by the cardholder as long as he or she complies with the terms of the credit card agreement. The credit cards remain the property of Chase, and may be recalled by Chase or returned by the cardholder for any reason, or for no reason and have no value as a tangible item in and of themselves.
"11. An annual fee of $20.00 is charged on most Visa and MasterCard credit card accounts maintained with Chase by persons residing in Alabama; interest and fees are charged by Chase pursuant to the credit agreement . . . in connection with said accounts.
"12. Chase has on occasion used the courts of Alabama to collect accounts of persons residing in Alabama which are delinquent.
"13. Persons residing in Alabama may use Visa and Mastercards throughout the United States and the world to purchase merchandise and services or to obtain cash advances.
"14. When Chase opens a credit card account in Delaware with a person residing in Alabama, that person is given a line of credit.
"15. Chase has never filed an excise tax return with the State of Alabama Department of Revenue.
"16. Chase has never paid any excise taxes to the State of Alabama Department of Revenue.
"17. Chase pays state franchise tax based on net income to the State of Delaware based upon 100% of its net income, and Chase does not pay income tax, Financial Institution Excise Tax, or any other income-based tax to any state except the State of Delaware. *Page 1043 
"18. Chase's principal business consists of making loans in connection with its credit card accounts.
"19. A person residing in Alabama may obtain a Visa or MasterCard credit card account with Chase and obtain an extension of credit with respect to such account as follows:
 "(1) He or she — Alabama resident — receives a solicitation through the mail . . . which was sent from outside Alabama to Martha H. Cluck residing in Montgomery, Alabama. That solicitation states that a 'new Chase Premier Visa card with a $5,000 credit line has been reserved in your name'. . . .
 "(2) If the person residing in Alabama who is solicited wants the credit card account offered, he or she fills out the application, and signs it. He or she then mails the application from Alabama or elsewhere to Chase in Wilmington, Delaware in an envelope furnished by Chase. Postage is paid by Chase in Delaware.
 "(3) Chase reviews the application in Delaware. Approval of the application is made, if at all, in Delaware; an account is opened in Delaware; and Chase mails the credit card (and also credit card account checks if requested) from outside Alabama to the person residing in Alabama along with an agreement.
 "(4) The cardholder may use his or her Visa or MasterCard to purchase goods or services from a retailer in Alabama or elsewhere.
 "(5) In making a purchase with a credit card the cardholder generally signs a credit card sales slip and receives a copy of it. In other circumstances purchases may be made by phone without the credit card by the card holder identifying himself or herself by supplying his or her account number to the merchant.
 "(6) The merchant takes the sales slip to a merchant bank ('merchant bank') (which may be located inside or outside Alabama) with which it has a contract and receives his money less a discount.
 "(7) The merchant bank or a transaction processor acting on its behalf records the information from the sales slip and transmits the information to a Visa (USA) Inc. or MasterCard International, Inc. interchange center located outside of Alabama for the purpose of obtaining payment of the face amount of the slip, less an interchange fee, from the bank which issues the credit card.
 "(8) The Visa (USA) Inc. or MasterCard International, Inc. interchange center settles transactions. On a regular basis Visa and MasterCard inform Chase of the amount owed by it with respect to sales slips which have been tendered for Chase's account from all acquiring merchant banks in aggregate and from Delaware Chase wire transfers funds to accounts maintained by Visa (USA) Inc. and MasterCard International, Inc. in New York to pay such amounts.
 "(9) The Visa (USA) Inc. or MasterCard International, Inc. interchange center also transmits the data relating to particular transactions to the computer center utilized by Chase which is located outside of Alabama at which individual transactions are posted to cardholders' accounts and from which statements are generated and mailed to cardholders.
 "(10) The cardholder pays part or all of the statement balance by sending the payment by mail to Delaware from Alabama or elsewhere. Payment is effective only when received by Chase in Delaware.
"20. Chase Visa and MasterCard accounts may also be accessed through the use of credit card checks which when used are negotiated like any other check and clear through the Federal Reserve System in the same manner as checks drawn on checking accounts and are honored or dishonored by Chase in Delaware. A credit card may be used to obtain a cash advance from certain banks. Drafts for cash advances are settled through Visa (USA) Inc. or MasterCard International, Inc. interchange centers located outside Alabama along with sales slips amounts as described in paragraph 19(8).
"21. The relationship between the cardholder and Chase is governed by the Agreement. . . . *Page 1044 
"22. Chase does not act as a merchant bank for any merchant located in the State of Alabama.
"23. Chase has no directors, officers, agents or employees in Alabama, and it does not regularly send its directors, officers, agents or employees into Alabama in connection with performance of their duties for the bank.
"24. Chase does not receive payments in Alabama.
"25. Chase has no material contacts with Alabama other than those relating to credit card accounts described above.
"26. No national bank located outside the State of Alabama currently or in the past has paid the Financial Institution Excise Tax to the State of Alabama.
"27. No state or national bank, which does not have an office or branch in Alabama, pays or has paid the Financial Institution Excise Tax nor has such tax ever been assessed against any such entity by the State of Alabama. A number of such state and national banks without offices or branches in Alabama issue credit cards or provide other financial services to Alabama residents.
"28. Financial institutions with offices in Alabama pay the Financial Institution Excise Tax based on 100% of their income attributable to such offices regardless of the residence of their customers."
 DISCUSSION
We must consider whether Alabama's excise tax can be imposed on the credit card business conducted by national banks located outside Alabama with Alabama residents. The State argues that the trial court would have held that the State could tax income derived by Chase from Alabama credit card holders "but for" the existence of 12 U.S.C. § 548, see infra, when the statute levying the excise tax (the "Excise Tax Statute") was enacted in 1935. In reaching its decision, the trial court relied on this Court's holding in Ex parte Louisville Nashville R.R.,398 So.2d 291 (Ala. 1981), Ex parte Dixie Tool Die Co.,supra, and N. Singer, 2A Sutherland Statutory Construction
§ 45.12 (Sands 4th ed. 1984), in finding that the legislature is presumed to be aware of existing federal laws and judicial enlargements when statutes are enacted or amended. Consequently, the trial court reasoned, the failure of the legislature to amend or reenact the Excise Tax Statute once Congress changed federal law to allow states to impose taxes on out-of-state national banks indicates the legislature's intent not to impose the excise tax on out-of-state national banks.
The State contends that the only impediment to the trial court's imposition of the excise tax on Chase is that the Excise Tax Statute was enacted when federal law prohibited such taxation. The State asserts that once that impediment was removed, the excise tax became fully applicable to out-of-state national banks. The State further argues that from the inception of the excise tax in 1935 to the most recent amendment in 1978 the Excise Tax Statute included any person, firm, or corporation doing business in Alabama as a national banking association.[1] In support of that argument, the State relies on the preamble to the Alabama Department of Revenue Regulations, which states that the excise tax is levied to give effect to federal law limiting the rights of states to tax national banking associations.[2] The State contends, based on Alabama statutes and the revenue regulations, that any national banking association or national bank doing business in Alabama is subject to the excise tax and that neither the statutes nor the regulations preclude taxation of out-of-state national banks. *Page 1045 
Chase argues that the Excise Tax Statute has the same applicability today that it had when it was first enacted. Chase contends that both Ex parte Dixie Tool Die Co., supra, and Ex parte Louisville Nashville R.R., supra, control the resolution of this case, because the legislature is presumed to be aware of existing limitations on the state's power to act or of judicial enlargement of the state's permissible area and method of taxation.
To determine whether the excise tax applies to out-of-state national banks such as Chase, we must look to the language of the statute to determine the legislature's intent. See Tin ManRoofing Co. v. Birmingham Board of Educ., 536 So.2d 1383
(Ala. 1988), and Ex parte Holladay, 466 So.2d 956 (Ala. 1985) (duty of court in construing statute is to ascertain legislative intent, which may be gleaned from the language used, reason and necessity for the act or statute, and the purpose sought to be obtained). When determining legislative intent from the language used in a statute, a court may explain the language but it may not detract from or add to the statute.State ex rel. Graddick v. Jebsen S. (U.K.) Ltd., 377 So.2d 940
(Ala. 1979); Town of Loxley v. Rosinton Water, Sewer FireProtection Auth., Inc. 376 So.2d 705 (Ala. 1979); Employees'Retirement Sys. of Alabama v. Head, 369 So.2d 1227 (Ala. 1979);Alabama Indus. Bank v. State ex rel. Avinger, 286 Ala. 59,237 So.2d 108 (1970); May v. Head, 210 Ala. 112, 96 So. 869 (1923). Courts may not improve a statute, but may only expound it.Lewis v. Hitt, 370 So.2d 1369 (Ala. 1979); Alabama Indus. Bank,supra. In the case of taxing statutes, such statutes are to be construed strictly in favor of the taxpayer and against the taxing authority. Eagerton v. Terra Resources, Inc.,426 So.2d 807 (Ala. 1982).
Accordingly, we must first look at the language of the Excise Tax Statute to determine the legislative intent. The excise tax applies to every "financial institution." That term is defined in Ala. Code 1975, § 40-16-1(1), in part, as follows:
 "Any person, firm, corporation and any legal entity whatsoever doing business in this state as a national banking association, bank, banking association, trust company, industrial or other loan company or building and loan association, and such term shall likewise include any other institution or person employing moneyed capital coming into competition with the business of national banks, and shall apply to such person or institution regardless of what business form and whether or not incorporated, whether of issue or not, and by whatsoever authority existing."[3]
The Excise Tax Statute further provides:
 "Every . . . financial institution shall pay to the state annually for each taxable year an excise tax for the privilege of engaging in this state in the business of banking and of conducting a financial institution, as in this chapter defined, and of conducting a business employing moneyed capital coming into competition with the business of national banks measured by its net income for such taxable year at the rate of six percent of such net income."
Ala. Code 1975, § 40-16-4.
Although the Excise Tax Statute defines "financial institution" as "any person, firm, corporation and any legal entity whatsoever doing business in this state as a national banking association," it does not explicitly include out-of-state national banks operating in the State in the same manner as Chase. In looking at the statute as a *Page 1046 
whole,[4] we find further evidence that the Excise Tax Statute does not include out-of-state national banks in § 40-16-6. Section 40-16-6 provides for the distribution of income derived from the excise tax to the municipalities and counties "in which such financial institutions are located." Section 40-16-6
provides that one-quarter of the proceeds derived from the excise tax is distributed to the county, one-half of the proceeds derived from the excise tax is distributed to the municipality, and one-quarter of the proceeds derived from the excise tax is distributed to the State's general fund. The factor controlling the distribution of the excise tax proceeds is the location of the financial institution. There is no provision in the Excise Tax Statute for the distribution of excise tax proceeds when a financial institution is not located in a county or a municipality in the State.[5]
Because the Excise Tax Statute does not expressly encompass national banks located outside Alabama and because no provision is made for the distribution of any proceeds derived from financial institutions not located in a county or a municipality in the State, we must look beyond the language of the statute. Although rules of statutory construction aid in ascertaining legislative intent, other factors may also be considered in resolving questions of legislative intent. Exparte Burns, 266 Ala. 241, 96 So.2d 308 (1957). In addition to looking at the language of the statute, courts may also look to the history of a statute. Bowlin Horn v. Citizens Hosp.,425 So.2d 1065 (Ala. 1982). Courts, however, may not indulge in conjecture or search for imaginary purposes. Alabama Indus.Bank v. State ex rel. Avinger, supra; State v. Zewen, 270 Ala. 52, 116 So.2d 373 (1959). Additionally, courts may not "amend statutes so as to make them express what [the courts] conceive the legislature would have done or should have done." Town ofLoxley v. Rosinton Water, Sewer Fire Protection Auth., Inc.,supra, at 708 (relying on May v. Head, supra). Neither is it the role of the courts to "usurp the role of the legislature and correct defective legislation or amend statutes under the guise of [judicial] construction." Town of Loxley v. RosintonWater, Sewer Fire Protection Auth., Inc., supra, at 708 (relying on Employees' Retirement Sys. of Ala., supra); see also Ex parte Holladay, 466 So.2d 956 (Ala. 1985).
A statute levying an excise tax was first enacted on October 22, 1932 (Ala. Acts 1932, Extra Session, Act No. 111, p. 107), but that statute was later repealed and was reenacted with amendments on April 4, 1933 (Ala. Acts 1933, Extra Session, Act No. 111, p. 104). The legislature repealed that statute and enacted the present Excise Tax Statute as part of the general revenue bill of 1935. Ala. Acts 1935, Act No. 194, Art. XII, Ch. I, §§ 346.1-346.6, pp. 428-34. Subsequent amendments have been adopted, but the legislature has never made provisions to include out-of-state national banks.
The purpose in levying the excise tax is to raise revenue for the State, not to enforce national or state banking laws.First Nat'l Bank v. State, 262 Ala. 155, 164, 77 So.2d 653, 660
(1954) (Department of Revenue assessed an excise tax against a national bank on net income earned on a exchange/sales transaction). This Court has recognized that the Excise Tax Statute did not apply to out-of-state national banks because of the federal prohibition against such taxation. In State v.First Nat'l Bank of Mobile, 239 Ala. 492, 196 So. 114 (1940), the Court addressed the issue of whether bond premium amortization deductions made by a national bank in computing *Page 1047 
its net income for purposes of the state excise tax should be allowed or disallowed. In reaching its decision that part of the deductions claimed by the bank should be allowed while other deductions should be disallowed, the Court examined the relation between federal law and state law. The Court stated that:
 "Since the decision in McCulloch v. Maryland, [4 Wheat 316, 4 L.Ed. 579 (1819)] . . . it has been the settled law that National Banks are Federal Agencies directly related to the fiscal affairs of the Federal Government; that such banking institutions are not subject to state tax burdens, except as Congress shall grant the privilege. The State has no inherent power to impose the taxes here in question. It is a question of power conferred by Congress.
 "The privilege granted by Congress finds expression in Section 5219, Revised Statutes of the United States and sundry amendments, now codified in 12 U.S.C.A. p. 604, § 548."
Id. at 494, 196 So. 114. The Court further stated:
 "The statute must be read as a whole in the light of constitutional principles, and also in view of the fact that all the State's power to tax National Banks is permissive, and its statutes must be considered in the light of Federal Statutes granting this permission."
Id. at 496, 196 So. 114.
In 1969, Congress added a temporary amendment and a permanent amendment[6] to § 5219 of the Revised Statutes, 12 U.S.C. § 548. Public L. No. 91-156, S.Rep. No. 92-448, 92d Cong., 1st Sess., reprinted in, 1971 U.S. Code Cong. Admin. News 2317, 2321. The temporary amendment provided:
 "(b) Except as otherwise herein provided, the legislature of each State may impose . . . the following taxes on a national bank not having its principal office located within the jurisdiction of such State, if such taxes are imposed generally throughout such jurisdiction on a nondiscriminatory basis."
Act of December 24, 1969, Pub.L. No. 91-156, 1969 U.S. Code Cong. Admin. News (83 Stat.) 457-58.[7]
In 1973, Congress imposed a moratorium until September 12, 1976, during which time States could impose only one tax in addition to those enumerated in the temporary amendment to Public L. No. 91-156.[8] This moratorium expired without any action by Congress, leaving states free to tax out-of-state national banks subject to the permanent amendment to § 548.12 U.S.C. § 548 provides:
 "For the purposes of any tax law enacted under authority of the United States or any State, a national bank shall be treated as a bank organized and existing under the laws of the State or other jurisdiction within which its principal office is located."
In addition to the changes made by Congress, the United States Supreme Court has changed its analysis of the application of the Commerce Clause to state taxing statutes. Prior to its decision in Complete Auto Transit, Inc. v. Brady,430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), the *Page 1048 
Supreme Court had held that any state tax imposed on the "privilege of doing business" in interstate commerce was per se unconstitutional. Spector Motor Serv., Inc. v. O'Connor,340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951). However, inComplete Auto Transit, Inc., the Supreme Court rejected this per se rule, reasoning that no economic consequence existed under the Spector rule and that the rule obscured the question of whether a state tax was unconstitutional. In rejecting theSpector rule, the Supreme Court enunciated a four-pronged test permitting states to tax interstate commerce as long as "the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." 430 U.S. at 279,97 S.Ct. at 1079. See also Amerada Hess Corp. v. Director, Div. ofTaxation, New Jersey Dept. of the Treasury, 490 U.S. 66,109 S.Ct. 1617, 104 L.Ed.2d 58 (1989); Goldberg v. Sweet,488 U.S. 252, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989); American TruckingAss'ns, Inc. v. Scheiner, 483 U.S. 266, 107 S.Ct. 2829,97 L.Ed.2d 226 (1987); Wardair Canada, Inc. v. Florida Dep't ofRevenue, 477 U.S. 1, 106 S.Ct. 2369, 91 L.Ed.2d 1 (1985);Armco, Inc. v. Hardesty, 467 U.S. 638, 104 S.Ct. 2620,81 L.Ed.2d 540 (1984); Commonwealth Edison Co. v. Montana,453 U.S. 609, 101 S.Ct. 2946, 69 L.Ed.2d 884 (1981); WashingtonStevedoring Cos. v. Department of Revenue, 435 U.S. 734,98 S.Ct. 1388, 55 L.Ed.2d 682 (1978). For a discussion of the history of state taxation under the Commerce Clause, see Hellerstein, State Taxation of Interstate Business:Perspectives on Two Centuries of Constitutional Adjudication, 41 Tax Law. 37 (1987).
In the case presently before us, the trial court in its opinion stated that Ex parte Dixie Tool Die Co., supra, controlled the resolution of the case:
 "In Dixie Tool Die, as in the instant case, the issue was whether in originally enacting the statute, the legislature intended to tax transactions not previously taxed under that statute.
 "The Court holds that at the times § 40-16-1 was enacted, the State was prohibited by federal statute from taxing out-of-state national banks. The National Bank Act expressly limited the state's authority to tax only those 'national banking associations located within its limits.' Because the federal statute was in force at the time § 40-16-1 was enacted, full knowledge and information as to the prior and existing law on the subject of this section is imputed to the legislature. A legislature is presumed to know the limit of its taxing power. Further, the statute will be interpreted on the assumption that the legislature was aware of existing statutes at the time new statutes are enacted.
 "Based on the foregoing, the Court finds that at the time § 40-16-1 was enacted the legislature could not have intended to impose a tax on out-of-state national banks."
In Dixie Tool Die Co., the Alabama Department of Revenue assessed a sales tax against an Alabama corporation for sales made to out-of-state buyers and to federal government contractors. The Court in Dixie Tool Die Co. considered whether sales made by the corporation to out-of-state purchasers were subject to Alabama's sales tax. The sales tax provision in question was Ala. Code 1975, § 40-23-4(a)(17). This code section provides:
 "(a) There are exempted from the provisions of this division and from the computation of the amount of the tax levied, assessed or payable under this division the following:
". . . .
 "(17) The gross proceeds of sales of tangible personal property or the gross receipts of any business which the state is prohibited from taxing under the Constitution or laws of the United States or under the Constitution of this state."
In its opinion, the Court in Dixie Tool Die Co. recognized that the United States Supreme Court allowed taxation of interstate *Page 1049 
commerce if the tax met certain criteria. However, the Court stated:
 " '[These] recent pronouncements of the United States Supreme Court which enlarge the permissible area of state taxation cannot change the intent or enlarge the scope of enactments passed by our Legislature. State v. Southern Electric Generating Co., 274 Ala. 668, 151 So.2d 216 (1963). Therefore, the question is not whether the State may, under prevailing caselaw, impose a tax upon the gross receipts earned from those transactions. Rather, the controlling issue is whether, in originally enacting this statute, the Legislature intended to tax these transactions.'
 "The provision that has become § 40-23-4(a)(17) was originally enacted in 1959. In 1959, and, indeed, until Complete Auto Transit [v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326] in 1977, the applicable case law held that a tax on the sale of goods in interstate commerce was invalid. The Legislature must be deemed to have been aware of the then-existing limits on a state's power to tax when it enacted the 1959 statute from which § 40-23-4(a)(17) derives. Thus, we must presume that the legislature knew, at the time the statute was passed, that the applicable case law would prevent the application of a sales tax to transactions in interstate commerce. The Legislature must also be presumed to be aware of the judicial enlargement of the State's permissible area and method of taxation, so it could have taken full advantage of those changes if it either intended or desired to do so. No changes have been made to § 40-23-4(a)(17). We conclude, therefore, that it applies today in the same manner that it did when enacted in 1959 and that it exempts sales of goods in interstate commerce from sales tax."
537 So.2d at 925 (quoting Ex parte Louisville Nashville R.R.,398 So.2d 291, 293 (Ala. 1981) (emphasis in original)).
The trial court also relied on Ex parte Louisville Nashville R.R., supra. In Ex parte Louisville Nashville R.R., the Court considered "whether Alabama's gross receipts tax upon a railroad's earnings from 'intrastate business' applies to receipts generated by the L N Railroad's movement of goods between two points in Alabama." Id. at 292. The railroad gross receipts tax statute in question, Ala. Code 1975, § 40-21-57, provided:
 "In addition to all other taxes imposed by this title, there is hereby levied a license or privilege tax upon each person engaged in the business of operating a railroad in the state of Alabama for the privilege of engaging in such business; said license tax or privilege tax shall be . . . in a sum equal to two and one-half percent of the gross receipts in excess of $150,000.00 of such railroad from all intrastate business of such railroad within the state of Alabama during the preceding year, the gross intrastate earning to be determined by the amount received from intrastate business."
The Court stated that the controlling issue in the case was whether in originally enacting the statute the legislature intended to tax these transactions:
 "The question before us is one of legislative intent. We presume that, in enacting the statute in 1935, the Legislature was aware of the existing interpretations and permissible limits of a state's power to tax. Thus, we presume our Legislature knew that at the time the statute was passed, the rule in [Minnesota v.] Blasius
[290 U.S. 1, 54 S.Ct. 34, 78 L.Ed. 131 (1933)] would have prevented the application of the tax to transactions similar to those at issue because they constitute a portion of interstate commerce. We also presume that the Legislature was aware of the fact that this tax could not be sustained as one 'in lieu of' other taxes because the tax was expressly levied '[i]n addition to all other taxes.' Similarly, we presume that the Legislature was apprised of the fact that it could not justify this tax as one upon 'local activity,' because to do so would require the indulgence in the proscribed conceptual segmentation of the integral parts of an interstate transaction. Finally, we presume that the Legislature is aware of the *Page 1050 
judicial enlargement of the State's permissible area and method of taxation, so that the Legislature could have taken full advantage of those changes if it either intended or desired to. No such changes have been made during the forty-five years since the statute was passed and the State has not, by legislation, attempted to enlarge the scope of its taxation. Thus, viewed in its broadest scope, the statute in question could reach and impose a tax upon only those activities which were local and purely intrastate in character. We therefore conclude that the statute, as enacted in 1935 and as it exists today, was not intended to apply to receipts generated by transactions such as these which, although conducted wholly within the confines of Alabama, constitute an integral portion or segment of interstate commerce."
398 So.2d at 296-97. See also State v. Southern Elec.Generating Co., 274 Ala. 668, 151 So.2d 216 (1963).
Like the question in Dixie Tool Die Co. and Ex parteLouisville Nashville R.R., the question before us is whether in originally enacting the Alabama Excise Tax Statute, the legislature intended to tax the net income derived by out-of-state national banks from solicitation of credit card applications from Alabama residents.
In determining the intent of the legislature, we presume that in enacting the Excise Tax Statute the legislature was aware of existing prohibitions against the State's power to tax national banks. When the Excise Tax Statute was enacted in 1935, federal law and judicial interpretation prohibited states from taxing out-of-state national banks. It was not until the Congressional moratorium expired in 1976 that states were allowed to tax out-of-state national banks. Even after the expiration of the moratorium in 1976, the Alabama legislature failed to amend or to reenact the Excise Tax Statute in light of the federal change. See Freeman v. Jefferson County, 334 So.2d 902, 904
(Ala. 1976) ("the rejection of an [a]mendment by the Congress which would have made the statute applicable to a given situation furnishes a strong inference that the statute was not intended to be applicable to that given situation"). Also, the Alabama legislature failed to amend or to reenact the Excise Tax Statute after the United States Supreme Court's 1977 announcement that there would no longer be a per se ban on taxation of interstate commerce. In fact, the last amendment to the Excise Tax Statute occurred in 1978, after the change in both federal statutory and judicial law that would have allowed taxation of out-of-state national banks, and no provision was then made for such taxation. Ala. Acts 1978, Special and Regular Sessions, Act No. 840, p. 1247. We do note, however, that a bill was introduced in the 1990 Regular Session of the Alabama legislature for the stated purpose of extending the Excise Tax Statute to out-of-state national banks, but it was not enacted. House Bill No. 944, Legislative Digest, Final Status p. 14 (May 3, 1990).[9]
In the present case, we recognize that under existing federal law and judicial enlargement states are able to tax out-of-state national banks if their taxing measures are nondiscriminatory. See 12 U.S.C. § 548 (1988). However, when the Excise Tax Statute was enacted in 1935, federal law prevented taxation of out-of-state national banks. In addition to the changes implemented by Congress in 1976, the United States Supreme Court changed its position so as to allow taxation of interstate commerce. See Complete Auto Transit,Inc. v. Brady, supra.
Under prevailing Alabama statutory construction law, we presume that the legislature was aware of the federal law in 1935 and of the subsequent changes in that law in 1976, as well as the changes in the United States Supreme Court's analysis of the taxation of interstate commerce. Ex parte Louisville Nashville R.R., supra, *Page 1051 
and Ex parte Dixie Tool Die Co., supra. Although the Alabama legislature presumably was aware of Congress's enlargement of state taxing power over national banks, and of the United States Supreme Court's enlargement in regard to taxation of interstate commerce, it made no changes to the Excise Tax Statute.
This Court's role is not to displace the legislature by amending statutes to make them express what we think the legislature should have done. Nor is it this Court's role to assume the legislative prerogative to correct defective legislation or amend statutes. Consequently, we conclude that the Excise Tax Statute applies today in the same manner that it did when it was first enacted. Because states were prohibited from taxing out-of-state national banks at the time the statute levying the excise tax was first enacted and judicial interpretation disallowed taxation of interstate commerce, the State may not tax Chase, an out-of-state national bank, in the absence of additional action by the Alabama legislature.
Because we hold that the Excise Tax Statute does not apply to Chase, we need not address any further issues raised. Consequently, the trial court's summary judgment in Chase's favor is due to be affirmed.
AFFIRMED.
ALMON, SHORES, HOUSTON, and KENNEDY, JJ., concur.
MADDOX and STEAGALL, JJ., concur specially, with opinion by STEAGALL, J.
[1] In oral arguments before this Court, the State argued that the intent of the legislature in enacting the act levying the excise tax was to tax a transaction rather than a "person."
[2] "The Excise Tax on Financial Institutions is levied to giveeffect to the provisions of Federal law limiting the right ofthe states to tax national banking associations. It is not a tax on income but is an excise tax measured by income. The proceeds of the tax, after the expense of administration, are distributed one-half to the municipalities, one-fourth to the counties and one-fourth to the general fund of the State."
Dept. of Rev.Reg., Preamble (emphasis added).
[3] The Department of Revenue, pursuant to the authority granted to it by Ala. Code 1975, § 40-16-3(e), further defines a "financial institution" as a "national banking association of any persons or entity which by employing monied capital as its principal business activity comes into competition with the business of national banks." Dept. of Rev.Reg. 810-9-1-.01(1) (1982). "Financial institutions" include common parent corporations but do not include insurance companies, individual citizens or fiduciaries who act in a representative capacity for individual citizens "merely because they make loans or investments of funds in bonds, notes or other evidences of indebtedness if such transactions are not made in competition with the business of national banks." Id. 810-9-1-.01(1)(b).
[4] "The cardinal rule for construction of a statute is to ascertain the legislative intent, which must be determined by examining the statute as a whole in light of its general purpose." Gulf Coast Media, Inc. v. Mobile Press Register,Inc., 470 So.2d 1211, 1213 (Ala. 1985). See also State ex rel.Moore v. Strickland, 289 Ala. 488, 268 So.2d 766 (1972); Vickv. Bishop, 252 Ala. 250, 40 So.2d 845 (1949).
[5] See also Ala. Code 1975, § 40-16-4(d): "The state shall have a lien upon the property of such taxpayer as provided for in this title for the collection of the taxes herein assessed." For such a lien to be enforced, Chase would have to have some property located in this state.
[6] The permanent amendment to § 5219 appears in the current version of 12 U.S.C. § 548 (1988).
[7] The temporary amendment was effective from December 24, 1969, through January 1, 1972.
[8] The State Taxation of Depositories Act of August 16, 1973, Public L. No. 93-100, 1973 U.S. Code Cong. Admin. News (87 Stat.) 391, 397, provides:
 "(b) The Congress finds that the national goals of fostering an efficient banking system and the free flow of commerce among the States will be furthered by clarifying the principles governing State taxation of interstate transactions of banks and other depositories. Application of taxes measured by income or receipts, or other 'doing business' taxes, in States other than the States in which depositories have their principal offices should be deferred until such time as uniform and equitable methods are developed for determining jurisdiction to tax and for dividing the tax base among States.
 "(c) With respect to any taxable year or other taxable period beginning on or after the date of enactment of this section and before January 1, 1976, no State or political subdivision thereof may impose any tax measured by income or receipts or any other 'doing business' tax on any insured depository not having its principal office within such State."
[9] Other states have actively passed legislation in the face of the changes in federal law so as to tax the kind of transactions at issue in the present case. These states include Indiana, Iowa, and Tennessee.