WOODALL, Justice.
 

 The Water Works Board of the Town of Bear Creek (“the Board”) appeals from a summary judgment for the Town of Bear Creek (“the Town”) declaring the Board to be dissolved and its assets vested in the Town. We affirm.
 

 The operative facts are undisputed. The Board was incorporated on June 28, 1954, pursuant to Act No. 175, Ala. Acts 1951, codified at Ala.Code 1975, § 11-50-310
 
 et seq.
 
 The objects of the Board were to “acquire, construct, operate, maintain, improve and extend a water works plant ... and system ... in the Town of Bear Creek.”
 

 Later, in 1970, the Upper Bear Creek Water, Sewer and Fire Protection District (“the District”) was incorporated, pursuant to Ala.Code 1975, § 11-89-1
 
 et seq.
 
 The purpose of the incorporation was to provide, among other things, water to areas within the counties of Franklin, Marion, and Winston.
 

 
 *1188
 
 Still later, in 1975, the Board issued a Water Revenue Bond, Series 1975, in the amount of $160,000, payable in annual installments through 2015. On March 20, 1981, the Board issued an additional Water Revenue Bond, Series 1981, in the amount of $141,000, payable in annual installments through 2019. The Board paid all its outstanding bonded indebtedness on the Series 1975 and the Series 1981 bonds in full on, or about, November 26, 2004. Subsequently, the Board issued no more bonds.
 

 Meanwhile, in 2002, the District entered into “water-purchase agreements” with three entities operating water-distribution systems within the District’s service area, namely, the Board, the Water Works and Sewer Board of the Town of Phil Campbell, and the Water Works and Sewer Board of the City of Haleyville (hereinafter collectively referred to as “the purchasers”). Concomitantly with the agreements, the District issued its Water Revenue Bonds, Series 2002, in a principal amount exceeding $7,000,000.
 

 The water-purchase agreement between the Board and the District provided, in pertinent part:
 

 “The District and the [Board] are entering into this Agreement
 
 ... in order to make provision for the payment of debt service on the Series 2002 Bonds and to make other revisions to the terms under which the District sells water to the [Board],
 
 The District has represented to the [Board] that the District will, contemporaneously with the execution and delivery of this Agreement, enter into wholesale water contracts with the other Purchasers providing for the sale of water to such customers at rates identical to those established in this Agreement.
 

 “NOW THEREFORE, in consideration of the premises and the mutual covenants herein contained, it is hereby agreed as follows:
 

 “Section 1. Supply of Water. The District agrees to sell and supply to the [Board], and the [Board] agrees to take and purchase from the District,
 
 such quantity of water as the [Board] may require for resale through the [Board’s] System to customers of the [Board],
 
 provided that the District shall not be obligated to supply water to the [Board] in a greater quantity than 1,252,200 gallons per month (the ‘Maximum Water Quantity’). The [Board] will not purchase water from any other source unless its requirements for water exceed the Maximum Water Quantity, and at the time the [Board] shall be purchasing from the District the Maximum Water Quantity and the District shall have refused, after six months’ written notice, the [Board’s] written request for additional water above the Maximum Water Quantity.”
 

 (Emphasis added.)
 

 On November 19, 2009, the Town filed a complaint for a declaratory judgment, seeking a determination that “title to the Board [had] vested in the Town on or about November 26, 2004,” pursuant to Ala.Code 1975, § ll-50-316(b), that is, upon the retirement of the Board’s Series 1975 and Series 1981 bonds. Section 11-50-316(b) provides, in pertinent part:
 

 “When the principal of and the interest on all bonds of such corporation payable from the revenues of any system owned by such corporation shall have been paid in full, then title to such system from the revenue of which the bonds are payable shall thereupon immediately vest in the municipality which authorized the incorporation of such corporation, and such system shall become the property of such municipality,
 
 except as
 
 *1189
 
 otherwise provided in Section 11-50-820. When title to all property owned by any corporation organized or the certifícate of incorporation of which is amended under this article shall have vested in the appropriate municipality which shall be entitled thereto under this section ...,
 
 then such corporation shall thereupon stand dissolved;
 
 provided, that, if at any time any such corporation does not have any bonds outstanding (regardless of whether it has ever issued any bonds), its board of directors may adopt a resolution, which shall be duly entered on its minutes, declaring that such corporation shall be dissolved; and, upon the filing for record of a certified copy of such resolution in the office of the judge of probate of the county wherein the certificate of incorporation of such corporation was filed, such corporation shall stand dissolved, whereupon title to any property and assets then owned by such corporation shall, except as otherwise provided in Section 11-50-320, vest in the municipality which authorized the incorporation of such corporation.”
 

 (Emphasis added.)
 

 On August 11, 2010, the trial court entered a judgment containing the following conclusions of law:
 

 “1. That pursuant to [§ ll-50-316(b) ], all assets of the [Board], including distribution lines, water tanks, rights of way, equipment,, bank accounts, water revenues, and every kind of asset, real or personal, became the property of the [Town,] and the [Board] stood dissolved with no further authority on November 26, 2004, when the bond indebtedness was retired.
 

 “2. That since that time, the [Board] has not existed as a corporation or any legal entity and the [Board] and its employees only acted as individuals or as agents, servants and employees of the [Town] in conducting the operations of the ... water system.”
 

 The trial court held that the Town had “the authority to take immediate control of all the assets of the water system.” From that judgment, the Board has appealed.
 

 On appeal, the Board concedes that, “strictly speaking,” it “has
 
 not
 
 issued any bonds since 2004,” when it paid its bonded indebtedness in full. Board’s brief, at 8 (emphasis added). However, it contends that, under its water-purchase agreement with the District, it is “obligated for [the] bonded indebtedness of [the District],” which makes it “tantamount” to a “bonded indebtedness” of the Board itself. Board’s reply brief, at 5. It insists that the trial court improperly “dissolve[d] the Board in light of the Board’s
 
 continuing legal and contractual indebtedness
 
 that was incurred for the benefit of the Town and the surrounding communities,” Board’s brief, at 6 (emphasis added), and that its dissolution “could only be based on an
 
 absurdly literal construction
 
 of the statutory language.” Board’s reply brief, at 4 (emphasis added). According to the Board, this construction fails to recognize that “sophisticated financial arrangements,” such as the agreements between the District and the purchasers, which allow “neighboring water boards ... [to] partner together,” are necessitated by “today’s world of decreasing natural resources.” Board’s brief, at 23.
 

 The Town replies that the water-purchase agreement between the Board and the District is not analogous — or tantamount — to bonded indebtedness and that
 
 *1190
 
 the judiciary is required to apply § 11-50-316(b) in accord with its plain meaning. We agree.
 

 Although the water-purchase agreement recited that its purpose was to facilitate the District’s payment of
 
 its own
 
 bond issue, it merely required the Board to buy each month “such quantity of water”
 
 as it needed
 
 “for resale through [its] System to [its] customers.” There was no minimum purchase requirement. It was in the nature of a standard “requirements contract” in which “the buyer expressly agrees to buy all of his requirements of a stated item from the seller,” John D. Calamari & Joseph M. Perillo,
 
 The Law of Contracts
 
 § 4-13, at 239 (3d ed.1987), rather than an issuance of a bond. In deed, requirements contracts have, in the past, encountered judicial disfavor on the theory that they were
 
 “illusory,”
 
 that is, that “the buyer might refrain from
 
 having
 
 requirements.”
 
 Id.
 
 at 240 (emphasis added). The water-purchase agreement between the Board and the District was clearly not tantamount to bonded indebtedness.
 

 “In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
 

 “1 “Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.” ’
 

 “Blue Cross & Blue Shield v. Nielsen,
 
 714 So.2d 293, 296 (Ala.1998) (quoting
 
 IMED Corp. v. Systems Eng’g
 
 Assocs.
 
 Corp.,
 
 602 So.2d 344, 346 (Ala.1992)); see also
 
 Tuscaloosa County Comm’n v. Deputy Sheriffs’ Ass’n,
 
 589 So.2d 687, 689 (Ala.1991);
 
 Coastal States Gas Transmission Co. v. Alabama Pub. Serv. Comm’n,
 
 524 So.2d 357, 360 (Ala.1988);
 
 Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle,
 
 460 So.2d 1219, 1223 (Ala.1984);
 
 Dumas Bros. Mfg. Co. v. Southern Guar. Ins. Co.,
 
 431 So.2d 534, 536 (Ala.1983);
 
 Town of Loxley v. Rosinton Water, Sewer, & Fire Protection Auth, Inc.,
 
 376 So.2d 705, 708 (Ala.1979). It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be.... To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers.”
 

 DeKalb County LP Gas Co. v. Suburban Gas, Inc.,
 
 729 So.2d 270, 275-76 (Ala.1998).
 

 The meaning of § ll-50-316(b) is clear and unambiguous: “When the principal of and the interest on
 
 all bonds
 
 of such corporation payable from the revenues of any system owned by
 
 such
 
 corporation shall have been paid in full, then title to such system ... shall thereupon
 
 immediately vest in the municipality
 
 which authorized the incorporation of such corporation,” and “such corporation shall
 
 thereupon stand dissolved,”
 
 or, failing the
 
 issuance of any bonds,
 
 it may be dissolved by a resolution of its board of directors. (Emphasis added.) In other words,
 
 where a public corporation organized for the purpose of operating a water system has issued bonds,
 
 that corporation is dissolved
 
 *1191
 
 by operation of law upon the retirement of the bonds. It is the existence of an issuing corporation’s
 
 own bonded indebtedness,
 
 not the amorphous obligations of those with whom the corporation has 0⅛ er contractual relationships, that holds in abeyance the dissolution trigger of the statute. Although the Board essentially concedes that the trial court’s judgment is in accord with the plain language of the statute, it invites us to expand the scope of the statute by judicial construction. This we may not do.
 

 “[Cjourts may not ‘amend statutes so as to make them express what [the courts] conceive the legislature would have done or should have done.’ ... Neither is it the role of the courts to ‘usurp the role of the legislature and correct defective legislation or amend statutes under the guise of [judicial] construction.’ ”
 

 Siegelman v. Chase Manhattan Bank (USA), Nat’l Ass’n,
 
 575 So.2d 1041, 1046 (Ala.1991) (quoting
 
 Town of Loxley v. Rosinton Water, Sewer & Fire Prot. Auth., Inc.,
 
 376 So.2d 705, 708 (Ala.1979)). It may be, as the Board asserts, that the result in this case fails to accommodate the “sophisticated financial arrangements” that “today’s world of decreasing natural resources” requires. If that is so, however, the remedy must come from the legislature, not from this Court by way of judicial fiat.
 

 In short, the trial court did not err in holding that the Town had “the authority to take immediate control of all the assets of the water system.” Its judgment is, therefore, affirmed.
 

 AFFIRMED.
 

 COBB, C.J., and BOLIN, MURDOCK, and MAIN, JJ., concur.