This is an appeal from a final judgment holding that certain sales of steel pipe by an Alabama manufacturer to a Mississippi contractor with consequent delivery in Mississippi were intrastate in character, and thus subject to the Alabama sales tax. We affirm.
The case was submitted to the circuit court upon a stipulation of facts supplemented by exhibits, the essentials of which follow.
American Cast Iron Pipe Company (Acipco) is a Georgia corporation qualified to do business in Alabama. Its principal office is located in Birmingham where it manufactures and sells metal products. The sale in question is an outgrowth of a contract made by the Mississippi Fuel Company (a subsidiary of Mustang Fuel Corporation of Oklahoma) with Mississippi Light and Power Company whereby the former agreed to construct a gas pipeline in Mississippi and, upon completion, sell the pipeline to the latter. Mississippi Fuel Company, in turn, ordered from Acipco quantities of pipe to specifications for this job. H.C. Price Company, the general contractor for the project, became the assignee of that contract. In due course the pipe contracted for was manufactured by Acipco at its Birmingham plant and, under a verbal agreement between Acipco, Mississippi Fuel, and Price, Acipco delivered the pipe to Gaido Lingle, Inc., whose plant was immediately adjacent to Acipco, for coating and wrapping. Acipco invoiced Price as this pipe was delivered to Gaido Lingle. Price separately contracted with Gaido Lingle for the coating and wrapping and also made payment directly to Gaido Lingle for those services. Whether Gaido Lingle or Price contracted with the common carrier, Parkhill Pipe Services Company, to deliver the pipe to the Mississippi job site is not clear, but it is conceded that Acipco did not arrange those shipments. Parkhill itself invoiced the freight charges to Price.
The Price Company subcontracted some of its work to Howard Berry Construction, and after the Berry Company purchased from Acipco quantities of pipe to be installed along the Mississippi right-of-way, shipment to Berry was made in the same way as the Price shipments. In summation then, we have the purchases and sales of pipe to Price and Berry from Acipco for ultimate installation in Mississippi; delivery of the pipe by Acipco to Gaido Lingle for coating and wrapping, and invoices for the purchase price sent by Acipco to Price and Berry at that time; Price or Lingle arranged for shipment to the Mississippi job-site; Parkhill, the carrier, invoiced the freight charges to Price.
Following submission upon the stipulation and exhibits, the trial court found that the sales were consummated by passage of title and delivery completed in Alabama because Acipco was required under its agreement to transport the pipe only to the coater. According to the trial court, the plaintiff's responsibility having ended upon delivery to Gaido Lingle, the transaction became a closed one under Ala. Code tit. 51, § 786 (2)(e). Citing Rite Tile Company v. State, 278 Ala. 100,176 So.2d 31 (1965) and State v. Mobile Stove Pulley Mfg. Co.,255 Ala. 617, 52 So.2d 693 (1950), it held that the transaction was taxable under state law.
Characterizing this conclusion of the trial court as "a rather facile consideration of a complex case," the defendant contends that the essential character of the transaction is the factor which determines whether the sale is intrastate. Such an ungenerous description overlooks the fact that the essential character of the transaction may be determined by giving some attention to the respective contractual duties of the parties, which apparently is what the trial court did.
The issue is not free from difficulty, to be sure, and as the defendant has requested, in our review we have taken into consideration the administrative ruling of the Alabama *Page 440 
Department of Revenue, dated December 18, 1967, which resulted from conferences between that department and the defendant. That ruling exempted from state taxation transactions similar to the present ones, with a significant difference. In the transactions covered by that ruling, the agreement between the parties required the manufacturer
 [T]o cause the pipe to be transferred to a pipe coater's plant for coating or wrapping, and after it has been coated or wrapped to cause it to be delivered to a common or contract carrier by rail or truck for transportation outside the state. The manufacturer is responsible for arranging with the carrier for the transportation of the pipe to an out-of-state destination and pays the freight to the carrier. . . .
The facts of the instant case call for the manufacturer to deliver the pipe to the coater's plant, without any furtherobligation for shipment. That difference is enough to place the facts of this case outside the ruling of December 18, 1967.
In response to any argument that the State is bound by that administrative ruling, we need only cite International Union ofOperating Engineers, Local 321 v. Water Works Board, 276 Ala. 462, 163 So.2d 619 (1964) in which this Court stated:
 Such administrative construction is neither binding on the State nor its agencies nor on the court. . . .
It is well established that a state may tax everything that is "the general mass of property" of that state, and things intended to be sent out of a state, but which have not left it, may remain a part of that general mass and subject to state taxation. Diamond Match Co. v. Village of Ontonagon,188 U.S. 82, 23 S.Ct. 266, 47 L.Ed. 394 (1903). The protection of the Commerce Clause begins at that moment when "they commence theirfinal movement for transportation from the state of their origin to that of their destination" (emphasis added); Coe v.Town of Errol, 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715 (1886). See also McCluskey v. Marysville Northern Railway,243 U.S. 36, 37 S.Ct. 374, 61 L.Ed. 578 (1917), and Empresa Siderurgica,S.A. v. County of Merced, 337 U.S. 154, 69 S.Ct. 995,93 L.Ed. 1276 (1949) ("It is the entrance of the articles into the export stream that marks the start of the process of exportation."). These cases illustrate the reason why the responsibility for shipment is important in this frame of reference, i.e., whether the shipment interstate actually has begun.
In Diamond Match Co., supra, the plaintiff cut and put into a river a much larger number of logs than its mills located in another state could utilize. It was the plaintiff's intention
to move them downriver after the spring thaw, load them onto railway cars and ship them to another state. Although the Court recognized that there had been some movement of the commodities ("[W]e may say that the cases establish that there may be an interior movement of property which does not constitute interstate commerce, though property . . . be destined to another State." Ibid at 96, 23 S.Ct. at 271), the Court reasoned that they could be taxed by the state because the commodities had not started on their final journey.
Coe v. Errol, supra, also upheld a state tax against logs which had been gathered and then moved to another point on a river for the purpose of shipment to another state. The question was aptly put:
 Are the products of a State, though intended for exportation to another State, and partially prepared for that purpose by being deposited at a place or port of shipment within the State, liable to be taxed like other property within the State?
 Do[es] the owner's state of mind in relation to the goods, that is, his intent to export them, and his partial preparation to do so, exempt them from taxation?
The opinion then distinguished between preparatory movements and that point in shipment when they become an interstate shipment:
 When the products . . . are collected and brought in . . . to a . . . station serving as an entrepôt *Page 441 
. . . such products are not yet exports, nor are they in process of exportation, nor is exportation begun until they are committed to the common carrier for transportation out of the State to the State of their destination, or have started on their ultimate passage to that State. Until then it is reasonable to regard them as not only within the State of their origin, but as a part of the general mass of property of that State, . . .
And the Court continued:
 [S]uch goods do not cease to be part of the general mass of property in the State . . . until they have been shipped, or entered with a common carrier for transportation to another State, or have been started upon such transportation in a continuous route or journey. . . . (emphasis added).
However, it has been held that once the interstate shipment has begun, an intermediate holding or delay caused by natural forces does not give the property a local situs. State v.Hammermill Paper Co., 149 Minn. 414, 184 N.W. 182 (1921).
In this case it is contended that the pipe was intended to be shipped in interstate commerce, and thus the delivery to Gaido Lingle had no effect upon their status as exempt property. But it has been held that commodities intended for interstate commerce which have had work performed on them in preparation for the shipment nevertheless are not exempt from state taxation. A case in point is Federal Compress Warehouse Co.v. McLean, 291 U.S. 17, 54 S.Ct. 267, 78 L.Ed. 622 (1934). There the plaintiff taxpayer operated a cotton compress which received ginned cotton shipped in interstate commerce for storage, compressed it, and moved it out of its warehouse according to orders received from holders of warehouse receipts. The carrier would receive the bales of cotton from the plaintiff, the compress charges would be paid by the carrier, and when the cotton had been brought to the warehouse by rail, the carriage charge would be based upon the throughinterstate rail rate from point of origin to destination, rather than the intrastate point to plaintiff's warehouse and then from warehouse to destination. Nevertheless, the Court held that the cotton, while in plaintiff's warehouse, "had not begun to move in interstate commerce and hence is not a subject of interstate commerce immune from local taxation." The Court continued:
 When it comes to rest there, its interstate journey . . . comes to an end, and although in the ordinary course of business the cotton would ultimately reach points outside the state, its journey interstate does not begin and so it does not become exempt from local tax until its shipment to points of destination
outside the state. Before shipping orders are given, it has no ascertainable destination without the state. . . . Property thus withdrawn from transportation, whether intrastate or interstate, until restored to a transportation movement interstate, has often been held to be subject to local taxation. (citations omitted) (emphasis added). Ibid at 21, 54 S.Ct. at 268.
Not only does the matter of movement in the commercial stream affect the essential nature of the transaction, but the relationship of the parties to that movement also affects its intra- or inter-state character. For example, in State TaxCommission v. Pacific States Cast Iron Pipe Co., 372 U.S. 605,83 S.Ct. 925, 10 L.Ed.2d 8 (1963), a pipe manufacturer, selling interstate, set prices for its goods delivered at the job site, with delivery usually being made either by common carrier or in the manufacturer's own equipment. On the occasion in question, pipe was made under specifications for an out-of-state job under a contract calling for out-of-state shipment. The manufacturer set a destination price which included the common carrier freight between the two points. However, delivery was made and title passed to the purchaser at the foundry. Then the purchaser transported the pipe with his own equipment to the out-of-state destination. The Supreme Court of the United States held that the State might levy a sales tax on the transaction because *Page 442 
passage of title and delivery occurred within the state. That decision might well be characterized as one which dealt with a "completed transaction" within the state, or as the trial court put it, a "closed transaction." A review of our cases reveals this as an underlying reason for the distinction between intrastate and interstate sales in our state, having local tax consequences.
In State v. Mobile Stove Pulley Mfg. Co., 255 Ala. 617,52 So.2d 693 (1950), the Alabama taxpayer operated a foundry. It made patterns for out-of-state customers based upon the customers' specifications, and these patterns were used in Alabama by the taxpayer to make castings which were shipped to the out-of-state customers. The patterns were retained in the custody of the taxpayer, but the customer was billed for both patterns and castings when the castings were shipped. This Court found that title to the patterns passed to the customer at that time and that "the parties understood that actual delivery to the buyer was not necessary to the passing of title." Constructive delivery of the patterns to the customers was found to exist from the time of billing because control of them was vested in the customers at that time, and thus the sale was completed when billing occurred.
While this Court recognized the general rule prohibiting a state tax on a sale of merchandise to be delivered to an out-of-state destination, it added:
 But, `sales completed entirely within a state are not transactions in interstate commerce; and this rule has been applied to a completed contract of sale between residents of a state, and a contract between citizens of different states, when the contract is made and delivery accepted in the state where the property is situated, although the buyer intends to ship the property outside the state.' (citations omitted) (emphasis added).
Hamm v. Continental Gin Co., 276 Ala. 611, 165 So.2d 392
(1964) explored the nature of the "closed transaction" as contained in the sales tax statute, Ala. Code tit. 51, § 786 (2)(e), but found that the facts of the case did not equate a closed transaction. The taxpayer was an Alabama manufacturer of cotton gins which were shipped to out-of-state buyers in the buyer's own equipment. The evidence established the existence of a custom in the industry that gin machinery was neither accepted nor payment due for it until it was installed and operating satisfactorily at the buyer's out-of-state site. The manufacturer itself was responsible for in-transit damage, and also installed the machinery at the out-of-state gin location. Under these circumstances this Court found that the parties did not intend that title pass until the machinery was installed and accepted out-of-state, hence there was no closed transaction in Alabama when delivery of the parts was made in Alabama for shipment on the buyer's equipment. Accord, State v.Communication Equipment Contracting Co., 335 So.2d 123
(Ala.Civ.App. 1976).
However, a closed transaction was found to exist under the facts of Rite Tile Company v. State, 278 Ala. 100, 176 So.2d 31
(1965). A ceramic tile dealer in Mobile made sales to out-of-state contractors who took delivery at the dealer's Mobile place of business and immediately transported it outside Alabama. The dealer sold the tile with knowledge that it would be "so transported," and title to the tile passed to the buyers upon delivery in Alabama. In finding that these sales were "closed transactions," this Court also commented upon the effect of a contemplated out-of-state shipment:
 There is no question that the sales here involved were `closed transactions.' Rather, the contention is that taxation of such sales is prohibited by the Commerce Clause on the theory that, when it is within the contemplation of the parties that goods sold will be promptly transported in interstate commerce, the sale itself is a part of an interstate transaction which may not be taxed by the state. In other words, the naked sale is only part of a continuous transaction and may not be singled out and made the subject of state taxation. This court and the *Page 443 United States Supreme Court have held contrary to this theory. (emphasis added).
The Court then cited Mobile Stove Pulley Mfg. Co., supra;Hamm, supra; and Pacific States Cast Iron Pipe Co., supra as applications of the closed sale principle, and observed:
 The holding of these cases is that a sale taking place entirely within a state is an intrastate transaction, regardless of the fact that the goods sold may subsequently be transported in interstate commerce. The taxation of the sale is not taxation of interstate commerce, but of a closed, intrastate transaction.
Under the stipulation of the parties, the trial court could have found that the pipe in question had not commenced its "final movement" for transportation from Alabama when taxed,Coe v. Errol, supra; that the movement from the Acipco plant to Gaido Lingle was an "interior movement" which did not constitute interstate commerce, even though the pipe was destined for another state, Diamond Match Co. v. Village ofOntonagon, supra; and not having been committed to a common carrier for transshipment out-of-state by that interior movement they were still a part of the mass of property subject to state taxation, Coe v. Errol, supra, whether the State chose to impose that tax by an ad valorem method or by a sales tax method. The trial court also could have found that the pipe was delivered to Gaido Lingle for work to be performed in preparation for shipment, rather than as a part of transportation in a continuous journey out-of-state. FederalCompress Warehouse Co. v. McLean, supra. The delivery to Gaido Lingle was made at the instance of the buyers who then arranged the transportation. As between Acipco and the buyers, the buyers assumed the risk of loss or damage in transport. The buyers were to pay for the transportation. The common carrier billed Price and Berry, not Acipco. Whether we refer to this delivery to Gaido Lingle as an actual or a constructive delivery to the buyers, the trial court could have found that all control over the pipe had been transferred to the buyers upon that delivery, with Acipco having no further duties relating to the shipment thereafter.
Acipco quoted prices to the final destinations "FOB Mill, Truck Freight Allowed," see Ala. Code tit. 7A, § 2-319, and it is clear that Acipco intended title to pass in Birmingham. Item 6 of Acipco's quotation to Mustang Fuel Corporation (Mississippi Fuel Company) reads:
 Title to products sold shall pass upon delivery to carrier at the point of shipment, irrespective of any freight allowance or prepayment of freight, and thereafter risk of loss or damage shall be upon Buyer.
This is consistent with the order from Mississippi Fuel Company:
 Pipe to be transferred to Gaido Lingle Co., Inc. for coating and wrapping by seller and truck transited to Mississippi to right of way by Buyer. Terms 30 days 2% discount on 10 days — semi-monthly billing on mill value. (emphasis added).
It is also noteworthy that the sales order contract form executed by Acipco on July 13, 1972 contains this language:
SHIP FROM BIRMINGHAM, ALABAMA — TO:
 Mississippi Fuel Company C/O Gaido Lingle Coating Company Birmingham, Alabama For reshipment into Mississippi by truck. (emphasis added).
and
. . . . .
 3. Billing: Invoice customer for pipe as it is taken to Gaido-Lingle Company.
As between the buyer and the carrier, Parkhill, the point of origin of the shipment was not the Acipco plant in Birmingham, but the Gaido Lingle plant, according to Parkhill's invoices:
 For loading, hauling, unloading and stockpiling 10 3/4" O.D. X .188 w. t. coated and wrapped pipe . . . on the Mississippi Fuel Company project in Mississippi. Point of origin — Gaido-Lingle Coating yard, Birmingham, Alabama. . . . (emphasis added). *Page 444 
Some of the invoices from Acipco to Mississippi Fuel Company recite:
 SHIPPED FROM BIRMINGHAM, ALABAMA TO YOU, c/o GAIDO LINGLE COATING CO. BIRMINGHAM, ALABAMA RESHIPMENT TO MISSISSIPPI BY TRUCK
and
FOB MILL, BIRMINGHAM . . .
while others state:
SHIPPED FROM BIRMINGHAM, ALABAMA
 TO GAIDO LINGLE COMPANY ACIPCO YARD BIRMINGHAM, ALABAMA
or
SHIPPED FROM BIRMINGHAM, ALABAMA
 TO H.C. PRICE COMPANY c/o GAIDO-LINGLE COMPANY BIRMINGHAM, ALABAMA RESHIPMENT TO MISSISSIPPI
We have concluded that the trial court was correct when it described this transaction a "closed transaction constituting a sale" under the Sales Tax Law, Ala. Code tit. 51, § 786 (2)(e) (1973 Supp.):
. . . . .
 (e) The term `sale' or `sales' includes installment and credit sales and the exchange of properties as well as the sale thereof for money, every closed transaction constituting a sale.
. . . . .
because it was the manifested intention that upon delivery to Gaido Lingle, title passed to the buyer and the responsibility for its subsequent shipment passed to the buyer as well:Ala. Code tit. 7A, § 2-401 (2), § 2-106 (1).
Accordingly, the judgment of the trial court must be, and is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER and SHORES, JJ., concur.