This is a sales tax case. The petitioner, Dixie Tool Die Company, Inc., manufactures goods in its Alabama plant for sale in and outside of Alabama. Dixie did not collect or remit sales tax to the State of Alabama Department of Revenue for sales made to its out-of-state buyers and sales made to federal government contractors. On November 10, 1983, the Department of Revenue issued to Dixie assessments of additional sales tax for such sales during the period October 1, 1980, through July 31, 1983.
Dixie requested a hearing before the Department's Administrative Law Division and, after an administrative hearing, the assessments were affirmed. Dixie appealed the assessments to the circuit court. The circuit court reversed the order of the Administrative Law Division. The Department of Revenue appealed the decision of the circuit court to the Court of Civil Appeals. The Court of Civil Appeals reversed the judgment of the circuit court and reinstated the assessments of sales tax. Dixie petitioned this Court for the writ of certiorari, seeking review of the decision of the Court of Civil Appeals. In addition, the Business Council of Alabama, Inc., moved for permission to file a brief of amicuscuriae. Both requests were granted by this Court.
The petition for certiorari does not raise any claim of error regarding the reinstatement of the assessments as they relate to the sales to federal contractors. Therefore, the only issue presented for review is whether the Court of Civil Appeals erred in holding that those sales by Dixie, an Alabama corporation, to purchasers located outside of the State of Alabama and shipped by common carriers selected by Dixie, were subject to Alabama sales tax.
Dixie argues that a tax on the sale of goods outside of the State of Alabama violates the commerce clause of the Constitution of the United States and Ala. Code 1975, §40-23-4(a)(17). Section 40-23-4(a)(17) exempts from tax "[t]he gross proceeds of sales of tangible personal property or the gross receipts of any business which the state is prohibited from taxing under the Constitution or laws of the United States or under the Constitution of this state." Dixie contends that the commerce clause prohibits a tax on the sale of goods in interstate commerce, and that such sales are therefore exempt under § 40-23-4(a)(17).
The U.S. Supreme Court has held that a tax upon commerce, either intrastate or interstate, is permissible if: (1) there is a substantial nexus between the activity and the taxing state; (2) the tax is fairly apportioned; (3) the tax is nondiscriminatory; and (4) it is reasonably related to services and protection provided by the taxing state. See CompleteAuto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076,51 L.Ed.2d 326 (1977); Washington Revenue Dept. v.Stevedoring Ass'n, 435 U.S. 734, 98 S.Ct. 1388,55 L.Ed.2d 682 (1978); Wardair Canada, Inc. v. Florida Dept. ofRevenue, 477 U.S. 1, 106 S.Ct. 2369, 91 L.Ed.2d 1 (1986).
This Court has held: *Page 925 
 "[These] recent pronouncements of the United States Supreme Court which enlarge the permissible area of state taxation cannot change the intent or enlarge the scope of enactments passed by our Legislature. State v. Southern Electric Generating Co., 274 Ala. 668, 151 So.2d 216
(1963). Therefore, the question is not whether the State may, under prevailing caselaw, impose a tax upon the gross receipts earned from those transactions. Rather, the controlling issue is whether, in originally enacting this statute, the Legislature intended to tax these transactions. To determine that intent, we must look to the nature of the activity involved as well as the 'history of the times' when the statute was enacted. Champion v. McLean, 266 Ala. 103, 95 So.2d 82 (1957); Houston County v. Martin, 232 Ala. 511, 169 So. 13
(1936); Standard Oil v. State, 55 Ala. App. 103, 313 So.2d 532 (Ala.Civ.App. 1975)."
Ex parte Louisville N.R.R., 398 So.2d 291, 293 (Ala. 1981) (emphasis in original).
The provision that has become § 40-23-4(a)(17) was originally enacted in 1959. In 1959, and, indeed, untilComplete Auto Transit in 1977, the applicable case law held that a tax on the sale of goods in interstate commerce was invalid. See the full discussion of this history in Exparte Louisville N.R.R., supra; see, also, State v.Mobile Stove Pulley Mfg. Co., 255 Ala. 617, 52 So.2d 693
(1950). The Legislature must be deemed to have been aware of the then-existing limits on a state's power to tax when it enacted the 1959 statute from which § 40-23-4(a)(17) derives. Ex parte Louisville N.R.R., supra. Thus, we must presume that the legislature knew, at the time the statute was passed, that the applicable case law would prevent the application of a sales tax to transactions in interstate commerce. Id. The Legislature must also be presumed to be aware of the judicial enlargement of the State's permissible area and method of taxation, so it could have taken full advantage of those changes if it either intended or desired to do so. Id. No changes have been made to §40-23-4(a)(17). We conclude, therefore, that it applies today in the same manner that it did when enacted in 1959 and that it exempts sales of goods in interstate commerce from sales tax.
The Department of Revenue argues that the tax applies notwithstanding § 40-23-4(a)(17) because the goods were not in interstate commerce when the sales took place. The Department of Revenue contends that the transactions were closed within Alabama and that because they were closed in Alabama they are taxable.
 "It is well established that a state may tax everything that is 'the general mass of property' of that state, and things intended to be sent out of a state, but which have not left it, may remain a part of that general mass and subject to state taxation. Diamond Match Co. v. Village of Ontonagon, 188 U.S. 82, 23 S.Ct. 266, 47 L.Ed. 394 (1903). The protection of the Commerce Clause begins at that moment when 'they commence their final movement for transportation from the state of their origin to that of their destination'. . .; Coe v. Town of Errol, 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715 (1886)."
American Cast Iron Pipe Co. v. Boswell, 350 So.2d 438,440 (Ala. 1977) (emphasis added in Boswell). Goods cease to be a part of the general mass of property in the State when "they have been shipped, or entered with a commoncarrier for transportation to another State, or havebeen started upon such transportation in a continuous route orjourney." Id., at 441, quoting Coe v. Town ofErrol, 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715 (1886) (emphasis added in Boswell).
Thus, the protection of the commerce clause, U.S. Const., Art. I, § 8, begins when the goods commence their final movement for transportation from Alabama. The earliest time at which the sales at issue can be said to have taken place is when the goods were delivered to the interstate carrier. Therefore, these were not sales closed in intrastate commerce; rather, they were interstate commerce sales. For this reason, the sales were exempt from taxation under § 40-23-4(a)(17). *Page 926 
Dixie also argues that the sales were exempt from taxation under the Department of Revenue's Rule 810-6-3-.35.02(1)(b). Because we have determined that the sales were exempt under § 40-23-4(a)(17), we need not address this argument.
The judgment of the Court of Civil Appeals, insofar as it holds that the sales claimed to be in interstate commerce were not exempt under § 40-23-4(a)(17), is reversed, and the cause is remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES, SHORES, BEATTY, HOUSTON and STEAGALL, JJ., concur.