L. CHARLES WRIGHT, Retired Appellate Judge.
Following an audit of Marks-Fitzgerald Furniture Company, Inc. (taxpayer), the Alabama Department of Revenue (department) entered a preliminary assessment for state sales tax in the amount of $17,063.85. The taxpayer requested a hearing before the Administrative Law Division of the department.
Following a hearing, ■ the administrative law judge entered a final order upholding the assessment. The taxpayer subsequently filed a notice of appeal in the Circuit Court of Madison County.
Following a trial de novo, the trial court entered a judgment upholding the final assessment. The trial court, however, adjusted the amount of the assessment, finding that a penalty should not have been included in the assessment. The trial court held that after adjustments, the amount of the additional tax due on credit card sales was $313.54, plus interest, and that the amount due on the discounted accounts receivable was $12,-791.53, plus interest.
The taxpayer filed a motion for a new trial, which was deemed denied by operation of law. The taxpayer appeals.
The state sales tax statutes levy a four percent state sales tax upon the gross proceeds of retail sales of tangible personal property. § 40-23-2(1), Code 1975. “Gross proceeds of sales” is defined as “[t]he value proceeding or accruing from the sale of tangible personal property ... without any deduction on account of the cost of the property sold, the cost of the materials used, labor or service cost, interest paid, any consumer excise taxes ... or any other expenses whatsoever, and without any deductions on account of losses_” § 40-23-l(a)(6). Under § 40-23-l(a)(5), every closed transaction constitutes a sale, including installment and credit sales.
In this case the taxpayer made retail sales of furniture to its customers at two retail stores in Huntsville, Alabama. It accepted payments for the furniture in cash, by credit card, or upon the execution of a promissory note with a security agreement. In each of the transactions the taxpayer added sales tax to the retail purchase price of the furniture and included the sales tax in the total amount which it required its customers to pay.
When a retailer, such as the taxpayer here, sells tangible personal property for cash, the retailer must remit to the department the amount of the sales tax that is added to the retail selling price and is collected from the customer. Under § 40-23-8, however, a retailer is allowed to report and to remit sales tax only on its cash sales each month and on that portion of any credit sales collected during the month. For example, if a retailer sells furniture on credit and the customer agrees to pay for the furniture in 12 equal installments, the retailer remits % of the sales tax each month to the department, as it receives the payments from its customers.
The dispute in this case concerns the taxpayer’s decision to sell or to discount its credit or time payment accounts to a finance company instead of keeping them and receiving payments periodically from its customers. The taxpayer insists that it should be required to remit sales tax to the department only on the discounted amount received from the finance company. The department’s position is that the taxpayer made a business decision to sell the accounts receivable with *123 out recourse and to receive a discounted amount immediately. The “discount” that the finance company charged the taxpayer when it purchased the accounts receivable represented a business expense of the taxpayer that could not be deducted from the taxable amount. The amount of the sales tax due on the transaction had previously been determined at the time of the retail sale and had been included in the total amount that was to be collected from the customer.
The trial court found that a discounted sale of doubtful accounts receivable to a finance company is in essence “the cash basis taxpayer’s deduction for bad debt losses.” It determined that the plain language of § 40-23-1(a)(6) expressly prohibits the taxpayer from remitting sales taxes on only the discounted amount received from the finance company.
Section 40-23-2(1) levies a four percent sales tax upon “the gross proceeds of sales.” Section 40-23-l(a)(6) provides that “gross proceeds of sales” includes “[t]he value proceeding or accruing from the sale of tangible personal property ... without any deductions on account of losses.” That section also provides, that no “expenses whatsoever” may be deducted. Under § 40-23-l(a)(5), installment and credit sales constitute a sale.
Whether the discount is viewed as a business expense as argued by the department or as a bad debt loss as found by the trial court, § 40-23-1(a) (6) expressly prohibits the taxpayer from doing that which is contested in this case.
The taxpayer, however, asserts that § 40-23-8 permits the practice that is contested in this ease. That section provides the following:
“Any person taxable under this division, having cash and credit sales, may report such cash sales, and the taxpayer shall thereafter include in each monthly report all credit collections made during the month preceding, and shall pay the taxes due thereon at the time of filing such report, but in no event shall the gross proceeds of credit sales be included in the measure of the tax to be paid until collections of such credit sales shall have been made.”
The administrative law judge determined that § 40-23-8 would apply only if the retailer is also the collecting party. He further supported his determination with a decision that he had previously entered in June 1991. Administrative Law Docket No. S. 90-152. The trial court adopted the administrative law judge’s finding concerning the applicability of § 40-23-8 to the facts of this case. We find the administrative law judge’s decision concerning § 40-23-8 to be well reasoned and persuasive. That portion of his decision is as follows:
“The discounted account receivables do involve credit sales. However, even on credit sales the retailer is still obligated to remit tax to the Department on the full amount paid by the customer. A retailer cannot avoid its legal obligation by selling or transferring the account receivable to a third party. Section 40-23-8 allows a retailer to delay remitting tax until the customer pays, but the retailer is obligated to remit all the tax paid by the customer, even if the customer pays a third party. As with credit card sales, a retailer cannot be allowed to remit less tax to the Department than may be paid by the retail customer.
“If tax is not due on the discounted amount received by the retailer, then what about § 40-23-8 and how much and when is tax due? One answer is that the Legislature intended § 40-23-8 to apply only if the retailer is also the collecting party. That is, if a retailer elects to sell an account to a third party, § 40-23-8 is no longer applicable because the retailer has given up control of the account. In that case, tax would be due as argued by the Department on the full sales price when the account is sold by the retailer.
“Another and I think better answer is set out in Administrative Law Docket No. S. 90-152, decided June 1991. In that case, a furniture store discounted delinquent account receivables to a related collection company for 40% of the face value of the account. I held as follows:
“ ‘A simple answer in this case is that tax should be computed on the 40% that is received by the Taxpayer for the delin *124 quent accounts. However, the 40% has no relationship to the tax actually collected from the customers and which the Taxpayer is required to pay to the Department. The customers may eventually pay more than the 40%, in which case tax would be paid by the customer but not remitted to the State. In no event should the Department receive less than is paid by the customer.
[[Image here]]
“ ‘In summary, the general rule is that a retailer remains liable on any transferred accounts and must report and pay tax on any amounts subsequently paid by the customers. The retailer is obligated to keep or provide the Department with reasonable access to records from which the Department can verify the amounts collected on the accounts. If the retailer fails to provide the necessary records, then the retailer must bear the consequences and must pay tax on the full amount due. In no event shall the retailer pay before the tax is collected, but the retailer is obligated to keep records showing how much if any has been paid.’ ”
The judgment of the trial court as it pertains to the taxpayer’s sales tax liability on the discounted accounts receivable is affirmed.
The taxpayer also questions the trial court’s finding that it owed sales tax on the full amount of the credit card transactions. In its order the trial court found that the taxpayer had conceded the credit card issue. In its post-judgment motion and on this appeal, the taxpayer contends that it made no such concession. In view of the discrepancy of opinions, we will address the issue.
For credit card sales, sales tax is added to the sale price and charged to the credit cards through an electronic terminal. The credit card company charges the taxpayer a previously negotiated fee of between 1½% and 5% and pays the taxpayer the balance either by electronically crediting the taxpayer’s bank account or by mailing a check to the taxpayer.
The dispute arises in this ease because the taxpayer reported, and paid, sales tax to the department only on the amount received from the credit card company after subtracting the credit card fee.
As previously discussed, “gross proceeds of sales” is defined as the value proceeding or accruing from the sale of tangible personal property, without deduction for any expenses whatsoever. We find that the credit card fee paid by the taxpayer to a credit card company is a non-deductible expense or cost of doing business. The fact that the credit card company deducts the fee before paying the taxpayer does not change the nature of the fee. The credit card fees paid by the taxpayer in this case must be included in the gross receipts subject to the sales tax.
Furthermore, credit card sales are not credit sales governed by § 40-23-8. Rather, on credit card sales the retailer receives payment immediately and, in return, pays the credit card company a fee for its service.
In view of the foregoing, the judgment of the trial court is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12 — 18—10(e), Code 1975.
AFFIRMED.
All the judges concur.