MOORE, Judge.
The Alabama Department of Revenue (“the Department”) and Julie P. Magee, in her official capacity as commissioner of the Department (“the Commissioner”),[1] appeal from a judgment entered by the Houston Circuit Court (“the trial court”) in favor of AAA Cooper Transportation (“AAA”) and Action Truck Center, Inc. (“Action”), granting a refund of sales taxes paid by AAA and Action. We reverse the trial court’s judgment.

Procedural Background

On July 18, 2007, AAA and Action jointly sought a refund of sales taxes paid totaling $965,596.79. Action had collected those sales taxes from July 2004 to August 2007 (“the refund period”) in connection with Action’s sale of 1,055 tractors to AAA, 835 of which AAA ultimately assigned to terminals located outside the State of Alabama.[2] AAA contended that it did not owe sales tax to. the Department on the 835 tractors assigned to out-of-state terminals.
On November 1, 2007, Tim Russell, who was then the commissioner of the Department, denied that refund request, and, on April 8, 2009, AAA and Action appealed the decision to the Department’s Administrative Law Division. On January 12, 2010, after an administrative hearing, the administrative-law judge (“ALJ”) affirmed the denial of the refund request. AAA and Action timely filed a joint notice of appeal in the trial court.
On November 16, 2012, after a hearing, the trial court entered its judgment. The trial court found that, although Action’s sale of the 835 tractors to AAA had involved an Alabama retailer and an Alabama purchaser and had closed in Alabama, the sale of those tractors was not subject to the sales tax established in Ala. Code 1975, § 40-23-2(4), because of the exemption found in Ala.Code 1975, § 40-23-1 (a)(5), referred to as the “common-carrier” exemption. In its judgment, the trial court stated that “[AAA] makes a valid argument when it states that it is a common carrier and it delivered 835 tractors/trucks to its oüt-of-state terminals.” *288 Therefore, the trial court reasoned, the sale of the 835 tractors in issue had not closed until AAA’s drivers had completed delivery of the 835 tractors to AAA’s out-of-state terminals. As a result, the trial court found that the sale of the 835 tractors at issue had been made outside Alabama and were not subject to Alabama’s sales tax.
On December 17, 2012, the Commissioner and the Department moved the trial court to alter, amend, or to vacate its judgment; on February 21, 2013, after a hearing on that motion, the trial court denied the motion. The Commissioner and the Department filed their notice of appeal on March 22, 2013.

Evidentiary Background

The parties stipulated to the facts underlying this dispute. Before the ALJ and before the trial court, the parties stipulated that Action is an Alabama corporation located in Dothan; that AAA is an Alabama corporation, headquartered in Dothan, with multiple out-of-state locations; that Action had sold AAA 1,055 tractors during the refund period; and that Action had collected and AAA had paid the 2% sales tax on each of the tractors purchased from Action. The parties further stipulated:
“8. [Action] delivered the purchased tractors to AAA at AAA’s Dothan facility, or a[n] AAA employee would drive the tractor from [Action’s] facility to AAA’s Dothan facility, for initial preparation.
“9. No drive-out certificate, as described in Section 40-23-2(4), Code of Alabama (1975), was obtained for these tractors.
“10. All tractors purchased from [Action] during the Refund Period and the subject of this appeal were registered and titled in Alabama under the International Registration Plan (IRP).
“11. AAA maintains and operates eighty-three terminals in fourteen states.
“12. AAA assigns to each terminal a specific number of tractors necessary to handle the volume of freight that passes through or comes to rest at the terminal.
“13. AAA assigned 835 of the 1,055 tractors purchased from [Action] during the Refund Period to terminals outside of Alabama.
“14. During the Refund Period, AAA paid to [Action] $965,596.79 in Alabama sales tax on these 835 tractors assigned to out-of-state terminals. That is the amount at issue.”
In addition to the above stipulated facts, the trial court was presented with the following additional evidence. Steve Roy, AAA’s chief financial officer, testified that AAA is a common carrier, certified by the federal Department of Transportation (“DOT”). Roy explained that, after the purchased tractors had been driven from Action’s facility to AAA’s “main yard” in Dothan, the newly purchased tractors had been held there until AAA had decided which of the tractors to assign to its out-of-state terminals and which of the tractors to assign to its Alabama terminals. Roy explained that, after AAA had made those assignments, AAA drivers had driven those tractors to their “ultimate terminals,” which Roy testified were the AAA terminals from which the tractors were intended to be used.
Carolyn Thornton testified that she had been employed as the business manager for Action since December 1985. Thornton testified that Action does “not collect Alabama sales tax on trucks that are delivered out of state as being a common carrier” and that the Department had never challenged that treatment. As an example, she testified that Action previously *289 had sold a new tractor to a Texas buyer, that Action had shipped the tractor to the Texas buyer via a third-party common carrier, and that no Alabama sales tax had been charged on that transaction.
Thornton also testified that, in the transactions at issue, Action had acted as the designated agent for AAA and had obtained the Alabama title on the tractors purchased by AAA. Thornton acknowledged that AAA had not executed any “drive-out” certificates, as contemplated in Ala.Code 1975, § 40-23-2(4), in connection with the tractors purchased from Action during the refund period to indicate that AAA was taking the majority of the tractors outside the State of Alabama.[3] Thornton testified that she understood that the “drive-out” certification was required for the purchaser to avoid payment of sales taxes.
David Andrew Guiler testified that he had been employed as the tax manager for AAA since 2006. Guiler explained that, as tax manager, he was responsible for ensuring that AAA paid, among other things, appropriate sales and use taxes and that he had supervised the filing of the refund petition that had initiated this case. Guiler indicated that he also had prepared a spreadsheet reflecting all the tractors purchased from Action during the refund period; according to Guiler, that spreadsheet also indicated, for each tractor, the Vehicle Identification Number, the number of the check used to purchase the tractor and purchase price, the ultimate terminal to which the tractor was assigned, and the amount of taxes paid for the tractor.
Guiler testified that he understood that, if a vehicle was titled and tagged in Alabama, it was not eligible for the drive-out exemption, and he acknowledged that the tractors at issue had all been titled to AAA in Alabama. Guiler acknowledged that the tractors in question had been issued an “IRP” tag; he described the IRP as a “plan in which a common carrier can register their tractors in a base state so they may travel in all 50 states or [in the] several states in which they operate.”[4] Guiler explained that an IRP tag is an “apportionable” tag that is used to apportion use taxes among all the states in which a company, including AAA, does business and uses a product, such as the tractors at issue.[5]
*290 Guiler admitted that nothing on the Action purchase invoices for any of the tractors at issue had indicated that the tractors were intended to be shipped out of the State of Alabama by common carrier or by any other method. Guiler also acknowledged that AAA had not paid a use tax on any of the tractors at issue to any other state because, he stated, AAA had paid the necessary sales tax to Alabama.[6]
Vicki Gardino, an employee of the Department, testified that she had been responsible for processing the refund request submitted by AAA and Action. She testified that she had reviewed the refund request and that, based on her review, she had determined that the sale of the tractors had been made by an Alabama retailer to an Alabama trucking company, that the tractors had been delivered to the Alabama purchaser in Alabama, that the vehicles had been titled in Alabama, and that no drive-out certificates had been executed. Based on that criteria, Gardino testified, the Department had denied the requested refund.

Analysis

On appeal, the Commissioner and the Department assert that the trial court erred in finding that Action’s' sale of the tractors to AAA had not been closed transactions within the State of Alabama, as contemplated in § 40 — 28—1(a) (5); that the trial court erred in finding that AAA had acted as a common carrier when it took delivery of the tractors it had purchased from Action; that the trial court had incorrectly interpreted the provisions of § 40-28 — 1(a)(5) as an exemption from taxation and in finding that the provisions of § 40-23 — 1(a)(5) were ambiguous and reasonably capable of two constructions; and that, even if the trial court’s interpretation of § 40-23-l(a)(5) is supportable, AAA could not have acted as a common carrier for the tractors at issue.
“[W]here the facts are not in dispute and we are presented with pure questions of law, [the] standard of review is de novo.” State v. American Tobacco Co., 772 So.2d 417, 419 (Ala.2000). We also apply a de novo review to the determination of the meaning and interpretation of tax statutes. Cocina Superior, LLC v. Jefferson Cnty. Dep’t of Revenue, 138 So.3d 313, 316 (Ala.Civ.App.2013). Because we conclude that our resolution of the Commissioner and the Department’s first two issues is dispositive of the appeal, we need not consider the Commissioner and the Department’s remaining issues.
Section 40-23-2(4), Ala.Code 1975, imposes a 2% sales tax on the gross proceeds of any retail sale made by any person, firm, or corporation “within this state” of an “automotive vehicle or truck trailer, [or] semitrailer.” The trial court, quoting the ALJ’s decision in Rohr Aero Services, Inc. v. State of Alabama Department of Revenue, Op. of Dep’t of Revenue, Admin. Law Div., Docket No. S. 01-317 (Aug. 21, 2002) (Final Order), stated:
“ ‘For Alabama sales tax purposes, a sale is closed when and where title is transferred by the seller to the purchaser. Code of Ala.1975, § 40-23-l(a)(5). Although not specified in § 40-23-1(a)(5), title is transferred under Alabama law when the seller or the seller’s agent completes the physical delivery of *291 the goods to the purchaser or the purchaser’s agent. Code of Ala.1975, § 7-2-401(2); State v. Delta Air Lines, Inc., 356 So.2d 1205 (Ala.Civ.App.1978).’ ”
(Footnote in Rohr omitted.) Based on the above-quoted language, the trial court concluded that, in this case, “a sale occurred in Alabama for which a sales tax is due unless a clear [exemption] exists under Alabama law.” We agree with the ALJ’s reasoning in Rohr, supra, and with the trial court’s reasoning on this point.[7]
The trial court then addressed two sales-tax exemptions potentially applicable to AAA in the instant case. Section 40-23-2(4), which contains the drive-out exemption, provides one such exemption. Section 40-23-2(4) provides, in pertinent part: “Sales of ... trucks, truck trailers, or semitrailers that will be registered or titled outside Alabama, that are exported or removed from Alabama within 72 hours by the purchaser or his or her agent for first use outside Alabama are not subject to the Alabama sales tax.”
The trial court correctly concluded that the drive-out exemption was inapplicable to the tractors at issue because they had been registered and titled in Alabama and no drive-out certificates had been executed.[8] Based on the clear language of § 40-23-2(4), we agree with the trial court’s reasoning as to the inapplicability of the drive-out exemption in this case.[9]
The trial court next addressed an exemption found in Ala.Code 1975, § 40-23-1. That section provides definitions applicable to the sales-tax statutes and contains what the parties refer to as the “common-carrier” exemption. It states, in pertinent part:
“(a) For the purpose of this division[, i.e., § 40-23-1 to § 40-23-39], the following terms shall have the respective meanings ascribed by this section:
[[Image here]]
“(5) Sale or sales. Installment and credit sales and the exchange of properties as well as the sale thereof for money, every closed transaction constituting a sale. Provided, however, a transaction shall not he closed or a sale completed until the time and place when and where title is transferred by the seller or seller’s agent to the purchaser or purchaser’s agent, and for the purpose of determining transfer of title, a common carrier or the U.S. Postal Service shall be deemed to be the agent of the seller, regardless of any F.O.B. point and regardless of who selects the method of transportation, and regardless of by whom or the method by which freight, postage, or other transportation charge is paid....”
(Emphasis added.)
Applying that language to the facts in this case, the trial court concluded that “because the taxing statute at issue indicates an intent to exempt from sales tax those trailers/trucks purchased in state for *292 use out of state[,] it would appear that the Department collected these taxes in error.” The trial court also found that the common-carrier exemption of § 40-23-1(a)(5) was reasonably capable of two constructions and, therefore, must be construed in favor of AAA. We disagree.
As recognized in Flav-O-Rich, Inc. v. City of Birmingham, 476 So.2d 46 (Ala.1985):
“The general rule in construing statutes granting exemption from taxation has been stated thusly:
“ ‘ “The ‘universal rule of construction is that exemptions from taxation, whether statutory or constitutional, are to be strictly construed, against the exemption and in favor of the right to tax, and that no person or property is to be exempted unless the intention to exempt such person or property clearly appears in some statute or constitutional provision.’ ” State v. Bridges, 246 Ala. 486, 489, 21 So.2d 316, 317, 159 A.L.R. 678 [(1945) ].
“ ‘It has long been the rule in this state that one seeking an exemption from taxation assumes the burden to clearly establish the right. In all cases of doubt as to legislative intention, the presumption is in favor of the taxing power. Title Guarantee Loan and Trust Co. v. Hamilton, 238 Ala. 602, 193 So. 107, 108 [1940]; Curry v. Reeves, 240 Ala. 14, 15, 195 So. 428, 430 [ (1940) ].’
“Brundidge Milling Co. v. State, 45 Ala.App. 208, 210, 228 So.2d 475, 477 (1969). However, such exemption clauses are not to be so strictly construed as to defeat or destroy the intent and purpose of the statute, and no strained statutory construction is to be given which would have that effect. Our responsibility is to give effect to the legislative intention where it is manifested. State v. Union Tank Car Co., 281 Ala. 246, 201 So.2d 402 (1967).”
476 So.2d at 48. We, however, find no ambiguity and apply the express language of § 40-23-l(a)(5).
Pursuant to the express language of § 40-23-l(a)(5), a sale is closed or completed when and where title is transferred by the seller or by the seller’s agent to the purchaser or to the purchaser’s agent. The language of § 40-23-1(a)(5) further expressly indicates that, for the purpose of determining when title of the product is transferred, which detérmines when and where the sale is closed, a common carrier or the United States Postal Service that transports the product for delivery is deemed to be the seller’s agent. We further note that, pursuant to Ala.Code 1975, § 7-2-401(2), which addresses the sale of goods, “[u]nless otherwise explicitly agreed[,] title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods.... ” Thus, pursuant to § 40-23-l(a)(5), a sale would not be completed until the seller or its agent, including a common carrier or the United States Postal Service if acting as the seller’s agent for delivery, transferred the product to the purchaser, whenever and wherever that transfer occurred.
The undisputed facts of this case establish that Action, an Alabama retailer and the seller, sold the tractors at issue to AAA, an Alabama corporation and the purchaser, and that those tractors were delivered to AAA in Dothan. The undisputed facts also establish that the tractors at issue were titled to AAA in Alabama. Thus, physical delivery of the goods and title to the goods were transferred from the seller to the purchaser in Alabama. The undisputed facts, therefore, easily fit *293 within the meaning of a closed-sales transaction for purposes of § 40-23-l(a)(5).
AAA, however, has attempted to characterize its role in accepting the tractors purchased from Action as that of a common carrier, acting as Action’s agent, and delivering the tractors to an out-of-state purchaser. AAA asserts that its main office in Dothan accepted the tractors from Action but only in its role as a common carrier to ready them for transport by AAA drivers once the tractors were assigned to their ultimate terminals out of state. Thus, AAA asserts, it acted as a common carrier in delivering the 835 tractors to an out-of-state purchaser, i.e., itself. AAA asserts that, because the undisputed facts establish that it is a common carrier and that it delivered the . 835 tractors to itself outside Aabama, the sale transactions of those 835 tractors were closed outside Aabama and were not subject to the sales tax.
AAA’s interpretation of § 40 — 23—1(a) (5) fails to give effect to the clearly expressed intent of that paragraph. The sale of each of the tractors was a closed transaction at the time AAA accepted delivery of the tractors in Dothan from Action; that is so because the seller, Action, delivered the product to the purchaser, AAA, in Aa-bama. See Rohr, supra, citing and relying on Aa.Code 1975, § 7-2-401(2). The fact that AAA, the purchaser of the tractors, decided, after accepting delivery of the tractors, to assign certain of those tractors to its out-of-state terminals did not alter the time and place of delivery for purposes of determining if sales tax was due.
Additionally, whether a common carrier may serve as both the purchaser and as a common carrier in sales transactions similar to those at issue in this case has been addressed by the Department’s Administrative Law Division. In Rohr, the ALJ concluded that, when a common carrier, located in Aabama, purchases products from a seller, also located within this state, the common carrier may not accept delivery of the product from the seller in its role as a common carrier and deliver the product to itself outside Aa-bama in an attempt to avoid the sales tax under § 40-23-1(a)(5).
Athough the Rohr decision stated that the language of § 40-23-l(a)(5) must be construed as applying only to third-party common carriers, in reaching its result, it also stated that, “[b]ecause the [seller] delivered the [purchased items] to the purchaser ... in Aabama, the sales were closed in Aabama, and Aabama sales tax is due.” We agree with Rohr because, as we concluded above, when an Aabama retailer delivers a product sold in Aabama to an Aabama purchaser, the sale closes at that time and, thus, sales tax is due.
The ALJ in Rohr also referenced an ALJ’s decision of Kopac International Corp. v. State of Alabama Department of Revenue, Op. of Dep’t of Revenue, Admin. Law Div., Docket No. S. 99-475 (August 16, 2000) (Opinion and Preliminary Order). In Kopac, an Aabama retailer sold wood boxes to James Coleman, which, Coleman indicated, were needed to ship furniture overseas. Coleman operated multiple businesses as separate legal entities; one such company was Covan Worldwide Moving, Inc., a common carrier. As the box orders were readied, Kopac released the boxes to Covan or to another carrier who, in turn, delivered some of the boxes to Aabama locations operated by Coleman’s business entities and some to out-of-state locations operated by Coleman’s business entities.
Because Kopac had understood that the boxes were to be delivered outside Aa-bama, it had npt collected sales tax from Coleman. The Department, however, as *294 sessed Kopac for the unpaid sales taxes, and Kopac appealed.
On appeal, the ALJ recognized that the case turned on whether Covan had been acting as a common carrier when it picked up the purchased boxes and, therefore, whether Covan’s delivery of some of the boxes outside Alabama meant that those sales had been closed outside Alabama and were not subject to Alabama’s sales tax. The ALJ recognized that Covan met the commonly understood definition of a “common carrier” and that it was a separate legal entity from Coleman American Moving Services, Inc., the company for which the boxes had been purchased and to whom the boxes were delivered.
As a result, the ALJ concluded that Covan had been acting in its capacity as a common carrier when it delivered boxes to Coleman American Moving and that, therefore, “pursuant to § 40 — 23—1(a) (5), the sales were not closed until Covan completed delivery of the boxes outside of Alabama.” The ALJ recognized, however, that
“[t]he above holding applies only to those boxes picked up by Covan at [Ko-pac’s] facility in Montgomery. The Department audit also includes some sales that were picked up by third party carriers and delivered to Alabama destinations. Those sales were closed upon delivery by the third-party carriers in Alabama. [Kopac] conceded at the hearing that those boxes delivered to Alabama destinations were taxable and are not being contested.”
This ease is easily distinguishable from Kopac. In this case, unlike the facts of Kopac, Action delivered the tractors to AAA, an in-state purchaser, and the deliveries were made within Alabama. Additionally, unlike the facts of Kopac, AAA has presented no evidence establishing that AAA in Dothan acted as a third-party common carrier who merely delivered the tractors to an out-of-state purchaser that is a separate legal entity from AAA. The evidence supports only the conclusion that AAA in Dothan was the purchaser, that it accepted delivery of the tractors in its role as the purchaser, and that it subsequently assigned 835 of the purchased tractors to some of its out-of-state locations.
AAA also insists that the Alabama Supreme Court’s decision in Ex parte Dixie Tool & Die Co., 537 So.2d 923 (Ala.1988), “make[s] clear that in transactions where goods are placed with a common carrier for delivery outside Alabama no sales taxes are due. This is true regardless of where title actually passes as between the seller and the buyer.” AAA’s brief, p. 27. AAA’s reliance on Ex parte Dixie Tool, however, is misplaced. In that case, our supreme court addressed whether sales taxes were due on sales made by Dixie, an Alabama corporation, to out-of-state purchasers; the products were placed by Dixie with third-party common carriers for shipment to those out-of-state purchasers. Id. at 924. The Department assessed Dixie for unpaid taxes on those sales, asserting that the goods had not been in interstate commerce when the sales had occurred; Dixie appealed the tax assessments, asserting that they violated the Commerce Clause of the United States Constitution and Ala.Code 1975, § 40 — 23—4(a)(17).[10] Id. at 925.
*295 On petition for certiorari review, our supreme court stated:
“ ‘It is well established that a state may tax everything that is “the general mass of property” of that state, and things intended to be sent out of a state, but which have not left it, may remain a part of that general mass and subject to state taxation. Diamond Match Co. v. Village of Ontonagon, 188 U.S. 82, 28 S.Ct. 266, 47 L.Ed. 394 (1903). The protection of the Commerce Clause begins at that moment when “they commence their final movement for transportation from the state of their origin to that of their final destination” ...; Coe v. Town of Errol, 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715 (1886).’
“American Cast Iron Pipe Co. v. Boswell, 350 So.2d 438, 440 (Ala.1977) (emphasis added in Boswell). Goods cease to be a part of the general mass of property in the State when ‘they have been shipped, or entered with a common carrier for transportation to another State, or have been started upon such transportation in a continuous route or journey.’ Id., at 441, quoting Coe v. Town of Errol, 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715 (1886) (emphasis added in Boswell).
“Thus, the protection of the commerce clause, U.S. Const., Art. I, § 8, begins when the goods commence their final movement for transportation from Alabama. The earliest time at which the sales at issue can be said to have taken place is when the goods were delivered to the interstate carrier. ' Therefore, these were not sales closed in intrastate commerce; rather, they were interstate commerce sales. For this reason, the sales were exempt from taxation under § 40-23-4(a)(17).”
Ex parte Dixie Tool, 537 So.2d at 925.
The facts of Ex parte Dixie Tool and those of the instant case are readily distinguishable. In Ex parte Dixie Tool, the seller placed the products with a common carrier for shipment to out-of-state purchasers; as a result, the sales at issue in Dixie Tool had not been closed for sales-tax purposes, pursuant to § 40-23-1(a)(5), until the common carrier, as an agent of the seller, completed the delivery of the products to the purchasers. Because the purchasers were located outside Alabama, the sales were not completed within the state. For that reason, the supreme court concluded that the sales transactions had been closed in interstate, rather than in intrastate, commerce and, therefore, that, pursuant to § 40-23-4(17), those sales could not be subjected to Alabama sales tax.
In this case, however, Action, the seller, delivered the tractors directly to AAA, an in-state purchaser, in Dothan. Therefore, the sales were made in intrastate commerce and do not run afoul of § 40-23-4(17). Additionally, Action’s delivery was not made to AAA in its capacity as a common carrier, and we reject AAA’s attempt to characterize its decision, made after Action’s delivery of the tractors to AAA and after AAA’s acceptance of those tractors, to assign 835 of those tractors to its out-of-state terminals as an action taken as a common carrier and as the seller’s agent within the meaning of § 40-23-1(a)(5). Thus, the sales transactions at issue in this case closed in Alabama and are subject to Alabama sales tax.
For the above reasons, we conclude that AAA’s purchase of the tractors at issue *296 was subject to sales tax pursuant to § 40-23-2(4) and that no refund of the sales taxes paid is due. We, therefore, reverse the trial court’s judgment and remand the cause for entry of a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, THOMAS, and DONALDSON, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. Pursuant to Rule 25(d), Ala. R. Civ. P., Ma-gee was automatically substituted as a party in place of Tim Russell when she succeeded Russell as commissioner of the Department, effective January 18, 2011.

. We presume the parties are referring to the tractor portion of a tractor-trailer.

. Section 40-23-2(4), Ala.Code 1975, known as the "drive-out” exemption, provides, in pertinent part:
"Sales of ... trucks, truck trailers, or semitrailers that will be registered or titled outside Alabama, that are exported or removed from Alabama within 72 hours by the purchaser or his or her agent for first use outside Alabama are not subject to the Alabama sales tax.”
Pursuant to the drive-out exemption, “a buyer incurs no sales tax on a vehicle that he or she purchases in Alabama if, within 72 hours of the purchase, the buyer removes the vehicle for ‘first use’ outside Alabama.” Boyd Bros. Transp., Inc. v. State Dep’t of Revenue, 976 So.2d 471, 477 (Ala.Civ.App.2007).

. According to an AU’s decision in Whatley Contract Carriers, LLC v. State of Alabama Department of Revenue, Op. of Dep’t of Revenue, Admin. Law Div., Docket No. U. 03-372, note 1 (March 23, 2004) (Final Order):
"The IRP is a reciprocal motor vehicle registration agreement among the various states and the Canadian Provinces. It requires that a commercial vehicle must be registered in a single base state for purposes of apportioning license fees among the various jurisdictions in which the vehicle is operated. For IRP purposes, a base jurisdiction is where the vehicle owner has a physical place of business and employees, and where the owner maintains its records.”

.It was undisphted that an IRP tag was relevant to determining use taxes owed; the parties also agreed that an IRP tag bore little, if any, relevancy, to a determination of the amount of sales taxes owed.

. Although Guiler indicated that, if it received a refund of the sales tax in this case, AAA then would be responsible for payment of use taxes in various states for each tractor, the Commissioner and the Department asserted that the statute of limitations had run and that AAA would have no liability in any other state for unpaid use taxes for the refund period at issue in this case. The Commissioner and the Department asserted that AAA, therefore, would receive a windfall for any sales taxes refunded.

. Although rulings of ALJs in tax cases are not binding on this court, they are persuasive authority on which this court may rely. See Marks-Fitzgerald Furniture Co. v. State Dep't of Revenue, 678 So.2d 121 (Ala.Civ.App.1995).

. We further note that the record contains no evidence indicating that the tractors were removed from Alabama within 72 hours of their purchase. AAA also acknowledges that its drivers drove them out of Alabama; thus, it is questionable whether it could meet the "first-use" requirement. Because the tractors were titled in Alabama and no drive-out certificates were executed, however, we need not rely on these factors.

.AAA also stipulated at the hearing that the drive-out exemption did not apply in this case.

. Section 40-23-4(a)(17), Ala.Code 1975, provides:
"(a) There are exempted from the provisions of this division[, i.e., § 40-23-1 to § 40-23-39,] and from the computation of the amount of the tax levied, assessed, or payable under this division the following:
[[Image here]]
“(17) The gross proceeds of sales of tangible personal property or the gross re- . *295 céipts of any business which the state is prohibited from taxing under the Constitution or laws of the United States or under the Constitution of this state."